FILED
United States Court of Appeals
Tenth Circuit

April 22, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

STEPHEN WALTER PHILLIPS,

Plaintiff-Appellant,

v.

THE PEPSI BOTTLING GROUP,

Defendant-Appellee.

No. 08-1003
(D.C. No. 1:05-CV-01322-EWN-KLM)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **SEYMOUR,** and **TYMKOVICH**, and, Circuit Judges.

---

Stephen Phillips appeals from the district court's denial of his motions to

conduct alternative discovery and for recusal of the district judge, and from the

district court's grant of summary judgment against him in his age discrimination

action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §

621 *et seq.* Because the district court did not abuse its discretion in denying the

discovery and recusal motions, and in the absence of a triable issue of material

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with the terms and conditions of 10th
Cir. R. 32.1 and 10th Cir. R. 32.1.

fact as to whether age constituted the reason for Mr. Phillips's termination, we affirm.[1]

On July 21, 2004, Pepsi Bottling Group ("PBG") terminated Mr. Phillips's employment after more than forty years of service. PBG based its decision on Mr. Phillips's failure to meet the expectations set out in a 90-day performance improvement plan. One year later, Mr. Phillips brought this age discrimination lawsuit contending that several PBG managers, over the course of five years, conspired to create written deficiency documentation in order to terminate him from his position as a Food Service Representative ("FSR") in violation of the ADEA.

PBG moved for summary judgment contending that Mr. Phillips's termination was the result of longstanding performance problems. After the motion for summary judgment was filed, PBG produced two documents that Mr. Phillips believed to be "critical" to his defense against summary judgment. The first document was an un-signed, un-sent notice of termination letter, dated May 10, 1999 and addressed to Mr. Phillips, which was found in the files of Scott Beijer, Mr. Phillips's then-supervisor. Mr. Phillips contended the letter "show[ed] that the decision to terminate [him] was, in fact, made as early as

---

[1] We grant PBG's January 13, 2009, motion for leave to file a revised supplemental appendix but deny its motion for sanctions against plaintiff and his counsel.

May 10, 1999," and not in 2004 as PBG asserted.  Aplt. App., vol. I at 185.  The second un-dated document was created by Renee Cedeño, PBG's Regional Human Resources Manager, suggesting that Mr. Phillips might have been terminated as part of a 2004 reduction in force.

On February 13, 2007, the district court permitted additional limited discovery, allowing Mr. Phillips to depose Mr. Beijer and Ms. Cedeño and "if necessary, request copies of the slide presentation in which the document appeared."  Aplt. App., vol. II at 272.  A week later, Mr. Phillips once again moved to expand discovery by requesting submission of interrogatories, the deposition of another of Mr. Phillips's former supervisors by telephone, and the taking of a Fed. R. Civ. P. 30(b)(1) deposition.  The court denied this motion.

Although Mr. Phillips appeals this denial, he fails to identify a single legal authority in support of his claim of entitlement to a reopening of total discovery.  "We review the district court's discovery order for abuse of discretion." *Trentadue v. F.B.I.*, 572 F.3d 794, 806 (10th Cir. 2009).  "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Id.* (citation and quotation marks omitted).  We are not persuaded the court abused its discretion in granting only limited additional discovery at this late point in the litigation.

On March 30, 2007, PBG moved for summary judgment a second time.

The district court granted PGB's motion. Thereafter, in November 2007, Mr. Phillips filed a motion for recusal of the district judge based on 28 U.S.C. §§ 144, 455(b)(1) (personal bias) and 455(a) (questionable impartiality), which the district court denied. This appeal followed.

We first address Mr. Phillips's appeal from the district court's denial of his recusal motion. In support of his motion, Mr. Phillips referenced the presiding magistrate judge's alleged predictions as to how the district judge would rule. He quoted the magistrate judge as saying "[t]he biggest problem with your case is that [the judge] hates employment cases and there's nothing you can do about it, it's random. . . . [H]e will try to find any way in the summary judgment briefs to say there's [sic] no material issues and grant summary judgment, and if he doesn't, he will make it tough at trial, and you won't win." Aplt. App., vol. II at 379 (citation omitted). Mr. Phillips also referenced some statements by the district judge that he construed as demonstrating "unfavorable predisposition, bias, and prejudice against Plaintiff . . . so extreme as to display clear inability to render fair judgment." *Id*. at 381. The district court denied the motion as "untimely, insufficient, and of such a quality that they would not cause a reasonable person to question [the court's] impartiality." *Id*. at 410. Mr. Phillips's challenge on appeal to the district court's denial of his recusal motion, which is devoid of any citation to the record or any legal authority in support of his claim, does not persuade us that the district court abused its discretion in

-4-

denying his motion. *See United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (reviewing denial of recusal motion for abuse of discretion); *Trentadue*, 572 F.3d at 806.

We review the district court's grant of summary judgment de novo, "applying the same standard as the district court." *Wolf v. Prudential Instruction Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). "[We] examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine [whether] the substantive law was applied correctly," and in so doing "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Applied Genetics Int'l, Inc. v. First Affiliated Sec. Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). However, "where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (citation omitted). In the ADEA context, Mr. Phillips must raise a triable issue of fact as to whether "age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Servs., Inc.*, 129 S. Ct. 2343, 2345 (2009).

Mr. Phillips concedes that he has no direct evidence to support his age discrimination claim. Consequently, his case must proceed under the three-step

framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. 411 U.S. at 802. If such a reason is provided, the burden of production returns to the plaintiff to demonstrate that the defendant's explanation was merely a pretext for discrimination. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).

Before the Supreme Court's decision in *Gross*, "the employee could prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find that her dismissal was motivated *at least in part* by age discrimination." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citation and internal quotation marks omitted). *Gross* changed "the latter part of this formulation by eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases." *Id.* But it did not overrule circuit precedents in which we have consistently employed the burden-shifting framework in ADEA cases. *See generally Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130-31 (10th Cir. 2009); *Gorzynski,* 596 F.3d at 106.

Whether judgment as a matter of law is appropriate in this case depends on a number of factors, including "the strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered . . . ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 148-49 (2000).

The district court presumed the existence of a prima facie case of age-based discrimination and observed that PBG had asserted a legitimate, nondiscriminatory basis for termination – namely, declining work performance. It then proceeded to address what it deemed "the central question in the case: whether Plaintiff has come forward with evidence of pretext sufficient to support the conclusion that his termination was discriminatory." Aplt. App., vol. II at 433. The district court answered this question in the negative.

On appeal, Mr. Phillips challenges the district court's determination that he failed to satisfy his burden to demonstrate pretext. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quotation and alteration omitted). "The relevant inquiry is not whether [the defendant employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir.

2004) (quotation marks omitted).  However, "there may be circumstances in which a claimed business judgment is so idiosyncratic or questionable that a factfinder could reasonably find that it is a pretext for illegal discrimination." *Beaird v. Seagate Tech.*, 145 F.3d 1159, 1169 (10th Cir. 1998).

Mr. Phillips contends that *Garrett*, reversing a grant of summary judgment where plaintiff proffered "ample evidence of inconsistent treatment of plaintiff, disturbing procedural irregularities, and the use of subjective criteria . . . ," 305 F.3d 1217, is controlling here.  In *Garrett*, plaintiff filed suit alleging age and race discrimination in violation of Title VII, 42 U.S.C. § 20003 *et seq.* and the ADEA.  Mr. Garrett asserted that his former employer discriminated against him in response to his involvement in promoting diversity within the company, and sought relief for disparate treatment, retaliation, and constructive discharge.  On appeal, we held that Mr. Garrett raised a triable issue of fact as to whether defendant's justification for his treatment was pretextual, reasoning that "[w]hen viewed in the aggregate, [Mr. Garrett's] proffered evidence is 'sufficient to raise a genuine doubt about Defendant's motivation.'"  *Id.* at 1220 (citation omitted).

The defendant's inconsistent treatment of Mr. Garrett, its deviations from company policy, and its reliance on wholly subjective evaluations, which anchored our decision there, *see, id.* at 1217-18, are not present here.  First, the allegedly discriminatory conduct at issue in *Garrett* started "almost immediately" after plaintiff began participating in an internal diversity program.  *See Pippin v.*

*Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006) (distinguishing *Garrett* on this basis). Here, no such immediate nexus exists. Second, in *Garrett* the plaintiff's proffered evidence that the defendant engaged in "disturbing" deviations from established company policy by failing to inform him of his placement in the "action needed" category for two months (thereby denying him notice or opportunity to act), and by keeping him in that category beyond the company's twelve-month limit. *Id*. at 1219-20. Mr. Phillips asserts no such deviations here.

In addition, in *Garrett* "[defendant] offered virtually no evidence to support its characterization of its ranking system. It presented no set of objective criteria by which employees are differentiated." *Id.* at 1217-18. Employment supervisors in that case determined employee rankings in meetings. *Id.* In this case, the process by which PBG ranks its employees is not opaque. Employee rankings here were calculated by computer on the basis of performance in a variety of areas, including such objective categories as number of sales per week, volume goals, and net placements. *See, e.g.*, Aplt. App., vol. VI at 988.

Finally, and more importantly, PBG's evaluation process was not "wholly subjective," unlike in *Garrett*. *See Garrett*, 305 F.3d at 1215, 1218; *see also Pippin*, 440 F.3d at 1195 (rejecting plaintiff's reliance on *Garrett* because the defendant's evaluation process was not "wholly subjective."). PBG's evaluations of Mr. Phillips over time, which contained subjective considerations such as

leadership, *see* Aplt. App., vol. III at 518 ("[Steven Phillips] has not provided the leadership required . . . ."), also required his supervisors to articulate Mr. Phillips's satisfaction of numerical business goals. *See id.* at 525 (showing that Mr. Phillips fell below targets in number of calls per day, number of sales per week, number of fountain placements in the profitable range, number of FSV placements selling 2 or more cases per week); *see also id.* at 703 ("Steve is missing plan in all other areas."). Indeed, despite Mr. Phillips's contention that PBG relied *entirely* on subjective grounds to support its stated reason for discharge, he concedes that PBG did offer some objective evidence. Aplt. Br. at 5 (admitting that scorecard ranking obtained during the month of Mr. Phillips's termination was based on "objective" criteria). He also admits that employee scorecards ranking employees at least in part on their objective performance "show declining rankings for Mr. Phillips." Reply Br. at 9.

Moreover, despite Mr. Phillips's submission of a few isolated instances of employment-based success, he concedes that he struggled with the increasing technological and business demands at PBG. In 2002, PBG introduced its "Sales Pad" laptop program, which required Mr. Phillips to create spreadsheets and powerpoint presentations. That same year, it implemented its P.E.P.S.I.[2]

_____

[2] The acronym stands for "Present" the opportunity in a situation, "Explain" the solution and benefit, "Provide" detail, "Secure" a sale, and "Implement" the next steps. *See* Aplt. App., vol. V at 769.

-10-

program. Mr. Phillips admitted that he had difficulty learning how to use the computer system, Aplt. App., vol. V at 773; ("it was probably harder for me to work with than a lot of people."), that it was "awkward to use when [he was] on sales calls in front of customers," *id*., that on one occasion he lost an entire program, *id*. at 774, and that he needed additional computer training. *Id*. He also admitted that, dating back to 2002, he avoided using PBG's required P.E.P.S.I. sales program because he believed that his customers preferred "an honest, straightforward approach . . . ." *Id*. at 769. He was one of only a few sales people to fail his initial P.E.P.S.I. certification test in 2002. In March 2004, Mr. Phillips was placed on a "90-Day Expectancy Plan," based in part upon his supervisor's dissatisfaction with his inability to effectively use Sales Pad and his difficulty with P.E.P.S.I. Despite additional training by his supervisor, Mr. Phillips failed his P.E.P.S.I. recertification in June 2004, and his supervisor recommended termination. PBG's decisions to computerize its sales program and to require specific selling techniques are business decisions, and neither is so "idiosyncratic or questionable that a factfinder could reasonably find it is a pretext for illegal discrimination." *Beaid*, 145 F.3d at 1169.

Nor is Mr. Phillips's case saved by the statistics he offered. In that regard, Mr. Phillips refers us to a 2005 article entitled "A Profile of Older Workers in Colorado," sponsored by the National Institute on Aging and the National Institute of Health and Human Services. Aplt. App., vol. IV at 734-35. The

-11-

profile contains a summary of the Colorado workforce by age group between the years of 1994 to 2002, which he asserts suggests that Pepsi should have had "approximately 13 managerial-level employees 55 or older instead of the 3 they did have." Aplt. Br. at 48. We fail to see the material relevance of employment statistics summarizing the Colorado work force across all industries between 1994-2002 to the presence or absence of discriminatory intent in PBG's termination of Mr. Phillips in 2004.

Mr. Phillips asserts that he was subjected to ageist comments. *See* Aplt. Br. at 14 ("On June 10, 1999, Beijer told Mr. Phillips, "You make too much money, you've been here too long, you need to go.") (citations omitted); *id*. at 35 ("Mr. Danger . . . referred to Mr. Phillips as the 'old man'; [he once] said to [another employee], "You're not going to let that old man outsell you are you?"; and on one occasion said, 'I told the company as long as we have these old employees here none of these new programs are ever going to work. They're too set in their ways for them to let it work, make it work.'")); *see also* Aple. Br. at 46. But of those persons Mr. Phillips accuses of ageist remarks, only one – Ms. Cedeño – was involved in the decision to terminate him.

It is well-settled that "age-related comments by non-decisionmakers are not material in showing the [employer's] action was based on age discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). The sole comment attributed to Ms. Cedeño, PBG's Regional Human Resources

Manager, is an undated statement that "You're old enough to retire."[3] Aplt. App., vol. II at 442. In the absence of any other nexus between this single, factually accurate observation and PBG's decision to terminate Mr. Phillips, we are not persuaded that this evidence raises a triable issue of fact as to whether PBG's asserted reason for termination was pretext for age discrimination. In sum, Mr. Phillips has failed to make a sufficient showing that PBG's nondiscriminatory basis for termination was pretextual, and that age was the "but-for" reason for his termination.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

---

[3] Mr. Phillips conceded that this was a true factual observation. Aplt. App., vol. II at 442.