**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JUDY F. JONES,

      Plaintiff–Appellant,

v.

OKLAHOMA CITY PUBLIC
SCHOOLS, INDEPENDENT SCHOOL
DISTRICT NO. 89 OF OKLAHOMA
CITY, OKLAHOMA,

      Defendant–Appellee.

 

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Amicus Curiae.

No. 09-6108

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:08-CV-00562-C)**

---

Scott F. Brockman (Stanley M. Ward and Woodrow K. Glass with him on the briefs),
Ward & Glass, LLP, Norman, Oklahoma, for the Plaintiff–Appellant.

Laura L. Holmes, The Center for Education Law, Inc., Oklahoma City, Oklahoma, for the
Defendant–Appellee.

James M. Tucker, James L. Lee, Carolyn L. Wheeler, and Vincent Blackwood filed a
brief on behalf of amicus curiae, U.S. Equal Employment Opportunity Commission, in
support of Appellant.

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Judy F. Jones appeals from the district court's grant of summary judgment in favor of her employer, Oklahoma City Public Schools ("OKC"), dismissing her claim of discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Although the district court found that Jones produced sufficient evidence to establish a prima facie case of discrimination and submitted evidence to show that OKC's proffered explanations for her demotion were pretextual, the court granted summary judgment to OKC on the ground that no reasonable juror could find that OKC had committed age discrimination. Because we conclude that the district court engaged in a "pretext plus" analysis in rendering its decision, we reverse.

**I**

Jones began working for OKC as a teacher in 1969. She then served as a principal of an elementary school for approximately fifteen years. In 2002, Jones was promoted to Executive Director of Curriculum and Instruction. Colleagues evaluated Jones' performance in this position as satisfactory or better. For the 2006-2007 fiscal year, Jones' negotiated salary was $98,270, with a daily pay rate of $396.25 per day.

In July 2006, Linda Brown became OKC's interim superintendant. Brown altered OKC protocol such that Jones reported first to Manny Soto and later to Linda Toure, two of OKC's five executive directors in charge of schools and support services. Over the

course of the next year, both Soto and Toure asked Jones when she was going to retire. On one occasion, Brown also questioned Jones about her retirement plans.

OKC eventually hired John Porter as its permanent superintendant in spring 2007. Porter was to start full-time work in July 2007, but was employed as a consultant during the months of May and June. According to Porter, he and Brown "worked closely" during this period "to ensure a smooth transition into the position of Superintendant." After reviewing the district's organizational chart, Porter determined that OKC's executive team should be reorganized. In particular, he decided that Jones' position could be eliminated and its duties absorbed by other directors. This elimination would allow Porter to reorganize the district's administration in a budget-neutral manner. Porter directed Michael Shanahan, OKC's senior human resources officer, to notify Jones that her position would be eliminated and she would be reassigned as an elementary school principal. Brown was present during this exchange, but averred that she did not have any input into Porter's decision.

Jones met with Shanahan in early June 2007. Shanahan communicated Porter's orders and informed Jones that her salary would stay the same for the ensuing school year only.[1] Jones asked Shanahan who made the decision to demote her, and Shanahan responded that it was Brown and Porter. Shanahan subsequently stated that four other executive directors were involved in the reassignment decision. Scott Randall, OKC's senior finance officer, later told Jones that she was the only director the administration

_____

[1] Shanahan also told Jones that she could apply for other open positions. Jones declined to apply for these positions because doing so would require her to apply to "the very people" who made the decision to eliminate her former position.

- 3 -

had "gone after." Randall also stated that if Porter was transferring Jones for financial or budgetary reasons, Porter would have "run" it by him.

After her reassignment and during her first year of employment as an elementary school principal, Jones retained her previous salary level. Her vacation benefits, however, were affected immediately. After Jones completed her first year as principal, her salary was decreased by approximately $17,000. This pay cut had the effect of reducing her retirement benefits. Jones' daily pay rate was also reduced by roughly five dollars per day.

One month after Jones' reassignment, Porter decided to create a new OKC executive position, Executive Director of Teaching and Learning. The job description and responsibilities for this position were quite similar to those of Jones' former position of Executive Director of Curriculum and Instruction. Both positions required a master's degree in curriculum and instruction, and the job responsibilities for both positions included oversight of programs designed to improve teacher instruction and curricular development. OKC filled this new position with an individual who was forty-seven years of age. At the time of Jones' reassignment, she was nearly sixty years old.

In May 2008, Jones filed suit in the District Court for the Western District of Oklahoma alleging OKC violated the ADEA when it demoted her to the position of elementary school principal.[2] OKC filed a motion for summary judgment, denying that

_____

[2] Jones also alleged wrongful discharge in violation of the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101, et seq., but conceded below that this claim should be dismissed.

Jones was demoted and arguing, in the alternative, that if Jones had suffered an adverse employment action it was due exclusively to the elimination of her former position.

Analyzing Jones' claims under the traditional <u>McDonnell Douglas</u>[3] framework, the district court concluded that Jones had established a prima facie case of age discrimination. The court determined that Jones suffered an adverse employment action because her transfer resulted in an immediate reduction in her vacation pay, retirement benefits, and the prestige of her position. Proceeding to the next step of the <u>McDonnell Douglas</u> analysis, the district court concluded that OKC met its burden of offering legitimate, nondiscriminatory reasons for its actions: (1) Porter decided to create a new deputy superintendant position in a revenue-neutral manner; and (2) Jones' position was eliminated to fund the new position. The court held that this evidence was sufficient to shift the burden back to Jones to demonstrate that OKC's reasons for her reassignment were pretextual.

In response, Jones noted that funding for her previous position stayed on the books for the 2007-2008 fiscal year, and staff in her former department continued working in that department before and after the position of Executive Director of Teaching and Learning was created. Moreover, Jones stressed the similarities between her previous position and the new position created just after her demotion. She also stated under oath that fellow OKC directors, including Brown, made age-related comments regarding her retirement plans and that these comments occurred outside of the context of a normal

---

[3] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). As discussed <u>infra</u>, <u>McDonnell Douglas</u> allows plaintiffs to prove age discrimination using a three-step, burden-shifting method of proof.

course of conversation.  Viewing the evidence in the light most favorable to Jones, the district court determined that a reasonable factfinder could conclude that OKC's proffered reasons for Jones' reassignment were inconsistent or unworthy of belief.

Quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000), however, the court reasoned:  "[T]here will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  According to the district court, Jones' case fell within this exception.  Her evidence for pretext was not "particularly strong" and "a reasonable juror could very well find no inconsistencies in [OKC's] position."  Although the court acknowledged that OKC leadership had made age-related comments, it faulted Jones for not providing any "additional evidence" to show that age played a role in the reassignment decision.  As a result, the district court granted summary judgment in favor of OKC.  This appeal followed.

## II

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the lower court.  McKenzie v. Dovala, 242 F.3d 967, 969 (10th Cir. 2001).  Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "We examine the factual record and reasonable inferences therefrom in the light most favorable to [Jones], who opposed summary judgment."  Thomas v. Int'l Bus. Machs., 48 F.3d 478, 484 (10th Cir. 1995).

**A**

**1**

Before reaching the merits of parties' arguments, we must first determine whether the Supreme Court's holding in Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009), decided after the district court issued its summary judgment order, affects our analysis on appeal. OKC argues that Gross compels dismissal of Jones' claim because it requires an ADEA plaintiff to provide some evidence that her employer was motivated solely by age when making an adverse employment decision.[4]

OKC's argument is flawed on several levels, but we need address only one: It conflates two separate standards for causation. The ADEA, like other anti-discrimination statutes, includes a causation requirement. It prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The statute, however, does not define the phrase "because of," and before Gross, it was unclear which causal standard applied. Gross clarified that the ADEA requires "but-for" causation. 129 S. Ct. at 2351. Consequently, to succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age. Id.

---

[4] "Although this argument was not raised below, inasmuch as [Gross] was decided after [Jones] filed her notice of appeal, we may consider changes in governing law arising during the pendency of the appeal." Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1222 (10th Cir. 1996).

OKC argues that in mandating but-for causation, Gross established that "age must have been the only factor" in the employer's decision-making process.

We disagree. The Tenth Circuit has long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA. See EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1170 (10th Cir. 1985) (quoting Perrell v. Financeamerica Corp., 726 F.2d 654, 656 (10th Cir. 1984)). Moreover, we have concluded that this causal standard does "not require[] [plaintiffs] to show that age was the sole motivating factor in the employment decision." Wilkerson v. Shinseki, 606 F.3d 1256, 1266 (10th Cir. 2010) (quotations omitted). Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as "age was the factor that made a difference." Id.; accord Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (requiring an ADEA plaintiff to show that age had a "determinative influence on the outcome" of her employer's decision-making process). Gross does not hold otherwise. Accordingly, Gross does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action.

**2**

A more nuanced question is whether Gross rendered the McDonnell Douglas framework of proving discrimination inapplicable to claims brought pursuant to the ADEA. Under McDonnell Douglas, a plaintiff may survive summary judgment by

providing circumstantial rather than direct evidence of discrimination. <u>See</u> 411 U.S. at 802-04. To do so, the plaintiff must first demonstrate a prima facie case of unlawful discrimination. <u>Id.</u> at 802. If she succeeds at this first stage, the burden of production then shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. <u>See</u> <u>Reeves</u>, 530 U.S. at 143.

This circuit has long held that plaintiffs may use the <u>McDonnell Douglas</u> three-step analysis to prove age discrimination under the ADEA. <u>See</u> <u>Danville v. Reg'l Lab Corp.</u>, 292 F.3d 1246, 1249 (10th Cir. 2002); <u>Ellis v. United Airlines, Inc.</u>, 73 F.3d 999, 1004 (10th Cir. 1996). We will not overrule our prior decisions applying this framework to ADEA claims unless those decisions are in conflict with <u>Gross</u>. <u>See</u> <u>United States v. Edward J.</u>, 224 F.3d 1216, 1220 (10th Cir. 2000) ("Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." (quotation and citation omitted)).

But rather than barring our use of the <u>McDonnell Douglas</u> paradigm, <u>Gross</u> expressly left open the question of "whether the evidentiary framework of [<u>McDonnell Douglas</u>], utilized in Title VII cases[,] is appropriate in the ADEA context." <u>Gross</u>, 129 S. Ct. at 2349 n. 2; <u>see also</u> <u>Reeves</u>, 530 U.S. at 142 (2000) (applying <u>McDonnell Douglas</u> to an ADEA claim "[b]ecause the parties do not dispute the issue"). <u>Gross</u>

accordingly does not overturn circuit precedent applying McDonnell Douglas to ADEA cases.

Moreover, the rule articulated in Gross has no logical effect on the application of McDonnell Douglas to age discrimination claims. Gross held that "the burden of persuasion [n]ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." 129 S. Ct. at 2348. McDonnell Douglas, however, does not shift the burden of persuasion from the plaintiff to the defendant. Rather, it shifts only the burden of production. Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1135 (10th Cir. 2003). Throughout the three-step process, "[t]he plaintiff . . . carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005).

Although we recognize that Gross created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of McDonnell Douglas to ADEA claims. See Phillips v. Pepsi Bottling Group, No. 08-1003, 2010 WL 1619259, at *3 (10th Cir. Apr. 22, 2010) (unpublished) ("[Gross] did not overrule circuit precedents in which we have consistently employed the [McDonnell Douglas] burden-shifting framework in ADEA cases."). While Phillips is not precedential, see 10th Cir. R. 32.1, we agree with its reasoning and join all of our sibling circuits that have addressed this issue. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010); Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); Smith v. City of Allentown, 589 F.3d 684, 690-91 (3d Cir. 2009); Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009); Geiger

v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009); see also Martino v. MCI Commc'ns Servs., Inc., 574 F.3d 447, 452 (7th Cir. 2009) (applying McDonnell Douglas without discussion of Gross); Bodkin v. Town of Strasburg, No. 09-2167, 2010 WL 2640461, at *2 (4th Cir. June 29, 2010) (unpublished) (same).

## B

Having concluded that McDonnell Douglas applies to ADEA claims, we must now address the issue of whether Jones demonstrated a prima facie case of age discrimination. To prove a prima facie case of age discrimination, a plaintiff must show: "1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998). The parties do not dispute that Jones demonstrated she was a member of the class protected by the ADEA, that she was qualified for her former position, and that she was treated less favorably than others not in the protected class.[5] OKC argues, however, that Jones did not suffer an adverse employment action because she remained employed in a position with similar responsibilities and received a daily pay rate that was "almost exactly the same" as her per diem rate as an executive director.

---

[5] OKC does obliquely reference the "undisputed" fact that, during his tenure as superintendant, Porter promoted and employed several persons over the age of forty. However, OKC makes this reference in an effort to counter Jones' assertions that she was demoted. OKC does not debate Jones' ability to satisfy the fourth factor of the prima facie test and has therefore has waived any argument to that effect. See Jordan v. Bowen, 808 F.2d 733, 736 (10th Cir. 1987) ("[Parties] who fail to argue [an] issue in their brief are deemed to have waived [that] contention on appeal.").

"The Tenth Circuit liberally defines the phrase 'adverse employment action.' Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a 'case-by-case approach,' examining the unique factors relevant to the situation at hand." Sanchez, 164 F.3d at 532 (citations omitted). Although we do not deem "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action," id. (quotation omitted), the prong is satisfied by a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir. 2004) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Under the facts of this case, the district court correctly determined that Jones suffered an adverse employment action. Jones' reassignment letter specifically stated that her salary level would remain the same for the ensuing school year only, and Jones suffered a $17,000 decrease in salary the following year. Her vacation benefits were reduced immediately upon reassignment, and her retirement benefits were reduced the following year. Although OKC argues that Jones did not experience a demotion, she certainly lost professional prestige and fell to a lower position in the district's organizational hierarchy. Also, OKC's argument that a five-dollar reduction in daily pay is not sufficient to constitute an adverse employment action is simply incorrect. All told, the record in this case conclusively shows that Jones suffered an adverse employment action and proved a prima facie case of age discrimination.

**C**

We thus consider the ultimate question of whether OKC was entitled to summary judgment. Despite holding that Jones established a prima facie case of discrimination and demonstrated that OKC's proffered reasons for her reassignment were pretextual, the district court granted OKC's motion for summary judgment. It concluded that Jones' claim fell within the exception outlined in Reeves because, "even when the evidence is viewed in the light most favorable to [Jones], no reasonable juror could find that [OKC's] decision to reassign her was based on her age." Jones argues that this determination constitutes reversible error because the rare conditions necessary to establish the Reeves exception are not present in this case. We agree.

In Reeves, the Supreme Court rejected the so-called "pretext plus" standard that required plaintiffs using the McDonnell Douglas framework to both show pretext and produce "additional evidence of discrimination" in order to avoid summary judgment. Id. at 146-48. Reeves expressly held that "a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148. No additional evidence is necessary to show discrimination because "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Id. at 147.

Consistent with Reeves, the Tenth Circuit has "definitively rejected a 'pretext plus' standard." Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1168 (10th Cir. 2007). Consequently, "once a plaintiff presents evidence sufficient to create a

genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant, 432 F.3d at 1125. A plaintiff produces sufficient evidence of pretext when she shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005). When evaluating the sufficiency this evidence, we look to several factors, "includ[ing] the strength of the [employee's] prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered" on a motion for summary judgment. Reeves, 530 U.S. at 148-49.

OKC proffered two legitimate reasons for Jones' reassignment: Porter's desire to undertake a reorganization of OKC's executive team in a revenue-neutral fashion and his belief that Jones' former position contained only narrow duties that could be absorbed by other directors. With respect to Porter's first goal, Jones produced evidence that her former position stayed on the books for the 2007-2008 fiscal year and that staff in her department remained employed in the same positions after her transfer. Further, Randall told Jones that if her transfer was actually motivated by budgetary reasons, Porter would have "run" it by him. Similarly, Randall attested to the fact that OKC could have easily taken Jones' former position off the books if it so desired.

Second, Jones presented evidence that a new position, Executive Director of Teaching and Learning, was created shortly after her transfer.  As noted supra, this position's job responsibilities were strikingly similar to those of Jones' former position as Executive Director of Curriculum and Instruction.  Although OKC argues that the new position entailed more responsibility, it also admits that the position reabsorbed many of the same duties of Jones' former position and was filled by someone thirteen years Jones' junior.  Together, this evidence was sufficient to satisfy McDonnell Douglas's third step, and the district court's grant of summary judgment was therefore improper.

In reversing the district court, we recognize that Reeves carved out a narrow exception to our general rule against a "pretext plus" requirement.  Under Reeves, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  530 U.S. at 148.  For example, an employer would be entitled to summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. (emphasis added).

But the Reeves exception does not apply here.  In reasoning that Jones generated only a weak question of fact regarding whether OKC's proffered reasons were pretextual, the district court improperly favored OKC's version of the facts.  It stated, for instance, that "[o]f the persons who [inquired into Jones' retirement plans], only one, Ms. Brown,

was even arguably involved in the reassignment decision, but [OKC] strongly argues she had no role in the decision process." After noting that "Brown's own testimony clearly states that the decision regarding [Jones'] reassignment was made by . . . Porter," the court concluded that Jones' "lack of evidence from which a reasonable jury could find discrimination . . . place[d] [her] case squarely within the contours of the Reeves exception."

However, the district court was required to view the facts in the light most favorable to Jones. See Thomas, 48 F.3d at 484. Accordingly, it should have credited Shanahan's statement that four other directors were involved in the decision to reassign Jones. Properly considered at the summary judgment stage, Jones' evidence of discrimination therefore included age-related comments by three executive directors, all involved in the reassignment decision.[6] Finally, even if we were to assume that Jones "created only a weak issue of fact as to whether [OKC's] reason was untrue," the corollary "abundant and uncontroverted independent evidence that no discrimination had occurred" did not exist in this record. Reeves, 530 U.S. at 148.

Rather than properly applying Reeves, the district court erroneously held Jones to the discredited "pretext plus" standard. The court faulted Jones for not presenting "additional evidence" that age was a determining factor in her reassignment. But after

---

[6] At the time of the decision to transfer Jones, OKC employed five executive directors (including Jones). Two of these directors had made comments concerning Jones' retirement plans: Linda Toure and DeAnn Davis. As previously noted, Toure questioned Jones at least once about when she was going to retire. Also, Davis asked Jones on two occasions when she was going to retire. A witness to one of these occasions interpreted Davis' questions as "indicating that things would be better if Dr. Jones would go ahead and retire and that she really ought to consider retiring."

showing that OKC's reasons for her transfer were pretextual, Jones was under no obligation to provide additional evidence of age discrimination.  See Reeves, 530 U.S. at 147; accord Swackhammer, 493 F.3d at 1168.  Accordingly, because we agree with Jones that the rare conditions necessary to satisfy the Reeves exception are not present, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings.