**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEPHEN RILEY,

　　　　Plaintiff-Appellant,

v.

TULSA COUNTY JUVENILE
BUREAU, ex rel., Tulsa County Board
of Commissioners,

　　　　Defendant-Appellee.

No. 10-5038
(D.C. No. 4:08-CV-00195-JHP-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

　　　　Plaintiff-Appellant Stephen Riley, proceeding pro se, appeals the district

court's grant of summary judgment to the Tulsa County Juvenile Bureau (TCJB)

on his claims of race and age discrimination and retaliation under Title VII of the

Civil Rights Act of 1964 and the Age Discrimination in Employment Act

---

[*]　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(ADEA). The district court concluded that Mr. Riley failed to exhaust his administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and that, even if his filing was timely, his claims failed on the merits. We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R. Civ. P. 56. *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010). "In so doing we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1243 (10th Cir. 2010) (internal quotation marks omitted). Based upon our review, we affirm.

Mr. Riley worked for the TCJB as a probation counselor until January 3, 2007, when the TCJB offered him the choice either to resign or be terminated. Mr. Riley chose to resign, though he contends he did so only under duress and was actually terminated. The TCJB does not dispute Mr. Riley's characterization of his resignation, so we will assume he was involuntarily discharged.

In his complaint, Mr. Riley alleged that the TCJB discriminated against him on the basis of his race and his age, both in connection with his discharge and on numerous occasions dating back to May 14, 2004. He also contended that after his discharge, the TCJB discriminated against him on January 26, 2007, in a hearing on his claim for unemployment benefits, and it retaliated against him on January 29, 2007, by initially rejecting his request for mileage reimbursement.

-2-

Before a plaintiff may file suit under Title VII or the ADEA, he must exhaust his administrative remedies by filing a charge with the EEOC. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Because Oklahoma is a deferral state,[1] Mr. Riley had 300 days from the date of the alleged unlawful conduct to file his charge. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(B) (ADEA).

On November 6 or 7, 2007, Mr. Riley filed an Intake Questionnaire with the Oklahoma Human Rights Commission (OHRC) indicating that he had been discriminated and retaliated against on the basis of his race and color. Attached to the OHRC questionnaire were an additional forty-eight typed pages describing the TCJB's unlawful conduct in detail and providing witness information. Mr. Riley subsequently signed a Charge of Discrimination prepared by the EEOC on December 31, 2007. In addition to his race and color, the Charge of Discrimination included Mr. Riley's age as a basis for the TCJB's unlawful conduct discrimination and retaliation. After Mr. Riley notified the EEOC of several corrections to the Charge of Discrimination, it prepared an Amended Charge of Discrimination, which he signed on January 24, 2008. The EEOC issued a right to sue letter on the initial Charge of Discrimination on January 8

---

[1]     A "deferral state" is one in which a state agency has the authority to investigate employment discrimination claims. The Oklahoma Human Rights Commission has such authority.

and then revoked that letter and issued a new one on January 28, 2008, in light of the Amended Charge. Both letters stated that the charge of discrimination was not timely because Mr. Riley had waited too long after the alleged discrimination to file it.

Mr. Riley filed his December 31 Charge of Discrimination more than 300 days after the last wrongful action described in his complaint. The December 31 Charge therefore did not timely exhaust any of his claims. The Supreme Court has held, however, that an intake questionnaire can constitute a charge of discrimination under certain circumstances, *see Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), and if it did constitute a charge, Mr. Riley's Intake Questionnaire would have timely exhausted at least some of his claims. But even if Mr. Riley's Intake Questionnaire did constitute a charge of discrimination, we conclude the district court properly granted summary judgment to the TCJB.

First, Mr. Riley did not submit the Intake Questionnaire to the OHRC within 300 days of any of the wrongful conduct alleged in the complaint up to and including his discharge. "Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The only allegedly wrongful conduct that occurred within 300 days of when Mr. Riley filed his intake questionnaire was that which occurred on January 26 and 29, 2008, after he

-4-

was terminated. Accordingly, even if the Intake Questionnaire constituted a charge of discrimination, it did not timely exhaust Mr. Riley's administrative remedies on any claims except those arising out of the two post-termination events.

Second, even if the questionnaire constituted a charge of discrimination, it was not sufficient to exhaust Mr. Riley's ADEA claims because it did not allege that the TCJB had engaged in any age discrimination or retaliation. Section 2 of the Intake Questionnaire, entitled "Discrimination Basis," asked Mr. Riley to identify the basis or bases under which he was filing. He checked the categories for race and color, but not for age. Similarly, Section 5, entitled "Retaliation Information," asked him to check the protected activity or activities in which he participated and for which he was retaliated against. Again, Mr. Riley checked only race and color, but not age. Moreover, in the forty-eight typed pages he attached to the questionnaire, he repeatedly said that the wrongful employment actions he described were racially motivated. Nowhere did he suggest that any of the wrongful conduct was motivated by his age. Because his Intake Questionnaire did not include any allegations of age discrimination or retaliation, it did not timely exhaust his remedies on his ADEA claims.

Finally, although the Intake Questionnaire was sufficient to timely exhaust Mr. Riley's Title VII claims arising out of the TCJB's alleged wrongful conduct on January 26 and 29, his allegations, even if true, are not actionable under

Title VII.  Mr. Riley alleged that the TCJB discriminated against him on January 26, 2008, when his supervisor testified falsely at a hearing on his claim for unemployment benefits, which caused the state to deny him benefits. Title VII's anti-discrimination provision makes it unlawful for an employer "*to fail or refuse to hire or to discharge* any individual, or otherwise to discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  The Supreme Court has held that the scope of the anti-discrimination provision is limited, therefore, to employer actions "that affect employment or alter the conditions of the workplace."  *Burlington No. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).

Mr. Riley has not pointed to any law, and we know of none, providing that state unemployment benefits are an element of an employee's "compensation, terms, conditions, or privileges of employment" within the meaning of Title VII. Such benefits are paid "by the state out of state funds derived from taxation" and are not made "to discharge any liability or obligation of [the employer], but to carry out a policy of social betterment for the benefit of the entire state."  *Nat'l Labor Relations Bd. v. Gullet Gin Co.*, 340 U.S. 361, 364 (1951).  Therefore, even if his supervisor did interfere with his ability to obtain state unemployment benefits by lying at the hearing, that conduct did not affect Mr. Riley's

employment or alter the conditions of his workplace, and it does not come within the scope of Title VII's anti-discrimination provision.

Mr. Riley also alleged that the TCJB retaliated against him on January 29, 2008. The scope of Title VII's anti-retaliation provision is not as limited as that of its anti-discrimination provision. Thus, the Supreme Court has held that the anti-retaliation provision applies to former employees, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), and that it "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace," *White*, 548 U.S. at 57. Therefore, the fact that Mr. Riley's employment with the TCJB had ended more than three weeks before the TCJB allegedly retaliated against him does not exclude his retaliation claim from coverage under Title VII.

Nonetheless, the anti-retaliation provision does not protect an employee from all retaliation, only from retaliation that produces significant harm. *See id.* at 68. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). This requirement of "*material* adversity . . . separate[s] significant from trivial harms." *Id.*

Mr. Riley alleged that when he submitted a claim for mileage reimbursement on January 29, 2008, he was told that it would not be approved until he submitted it on the form for mileage driven outside, rather than inside,

-7-

the county.  Mr. Riley also alleged that he had submitted similar mileage reimbursement requests in 2006 and the reviewing supervisor had approved them without question.  He claimed that the supervisor denied his January 29 request because the supervisor was angry that Mr. Riley had filed an internal grievance about his discriminatory discharge.  Mr. Riley admitted, however, that as soon as he submitted his reimbursement request on the form the supervisor asked for, his request was approved and he was paid in full.  He did not allege that he suffered any significant harm as a result of the delay.  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*  The TCJB's delay in processing Mr. Riley's mileage reimbursement request was not enough to dissuade a reasonable employee from making a charge of discrimination.  It was, at most, a minor annoyance that was not actionable under Title VII.

The judgment of the district court is affirmed. Mr. Riley's "Motion Request to Subpoena Witnesses for Depositions or Affidavits Testimony" and his "Motion Request to Include Additional Witness and Subpoena for Deposition or Affidavit Testimony" are denied. And because the district court granted him leave to proceed *in forma pauperis* on appeal, Mr. Riley's request that this court also grant him leave to do so is denied as moot.

Entered for the Court


Wade Brorby
Senior Circuit Judge