**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KEIKO KAWAHARA,

     Plaintiff - Appellant,

v.

GUARANTY BANK AND TRUST,

     Defendant - Appellee.

No. 19-1341
(D.C. No. 1:17-CV-02979-REB-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Plaintiff-Appellant Keiko Kawahara appeals from the district court's grant of

summary judgment to Guaranty Bank and Trust (Guaranty) on Ms. Kawahara's

discrimination and retaliation claims under Title VII, 42 U.S.C. § 1981[1], and the Age

Discrimination in Employment Act (ADEA).  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Ms. Kawahara acknowledges that the standards to be applied in evaluating a
claim of racial discrimination in employment are the same in § 1981 actions as those
applied in actions brought under Title VII.  See Lounds v. Lincare, Inc., 812 F.3d
1208, 1221-22 (10th Cir. 2015).  Further, the standards to be applied in evaluating a
§ 1981 retaliation claim are the same as those applied in actions brought under Title
VII.  Parker Excavating, Inc. v. Lafarge W., Inc., 863 F.3d 1213, 1220 (10th Cir.
2017).

## Background

Ms. Kawahara, a 58-year-old Asian woman, worked for Guaranty from 2007 until her termination on November 30, 2016. She served as the Vice President of Retail Banking and reported to Mike Dipetro. She consistently received favorable performance reviews and was never disciplined.

In September 2016, Guaranty merged with Home State Bank (Home State). Prior to the merger, Guaranty and Home State identified overlaps in staffing and developed a plan for a reduction in force (RIF). Mr. Dipetro was directed to reduce his department's expense by $1 million. He did this by performing a job mapping analysis to find overlaps in staffing between Home State and Guaranty. He determined that Ms. Kawahara's position could be automated and included it in the RIF. Ultimately, 65 employees were laid off in the RIF.

Ms. Kawahara had her termination meeting on July 25, 2016. At the meeting, Ms. Kawahara claimed she had recorded allegedly inappropriate comments made by Guaranty employees. The comments pertained to loans granted under the Community Reinvestment Act (CRA), a federal law designed to encourage banks to lend to low- and moderate-income individuals. See 12 U.S.C. § 2901. Ms. Kawahara later testified that she raised concerns about the CRA loans to Mr. Dipetro three or four times between February 2015 and her termination meeting. She was concerned about an employee referring to the CRA loans as "minority" loans and low lending caps. She told Mr. Dipetro that the employee comments and loan caps were "not right."

After the meeting, Ms. Kawahara emailed Rebecca Adauto-Harren, Senior Vice President of Human Resources, about discrimination concerns regarding "minorities and the minority communities" within Guaranty. Guaranty investigated Ms. Kawahara's complaint. In her investigation interview, Ms. Kawahara reiterated her complaints about the CRA loans. She also complained about her work situation, citing her hours and workload as well her feeling that she was isolated at meetings. However, the investigation found no discrimination.

After the termination meeting and the subsequent investigation, Ms. Kawahara returned to Guaranty and was required to train her temporary replacement, Scott Malan, a white male and Senior Vice President of Retail Banking for Home State. After her termination in November 2016, Mr. Malan undertook Ms. Kawahara's responsibilities until those responsibilities were automated in April 2017.

Ms. Kawahara also claims there was other inappropriate conduct at Guaranty. In October 2015, an image of Ms. Kawahara's head was photoshopped onto a flyer that she thought was demeaning. In a manager's meeting, Mr. Dipetro referred to Ms. Kawahara as an "old lady" in an apparent joke. Ms. Kawahara also alleges that Mr. Dipetro ordered her to manipulate data to ensure that three male branch managers were ensured payout bonuses. She also claimed that Mr. Dipetro was angry when a female manager was entitled to a bonus.

Ms. Kawahara sued Guaranty, alleging claims of discrimination based on gender and race/national origin, as well as a "gender-plus" claim, under Title VII, age discrimination under the ADEA and retaliation under both acts. The district court

3

granted summary judgment to Guaranty on the discrimination claims because Ms. Kawahara was unable to establish that Guaranty's legitimate, nondiscriminatory reason for her termination was pretextual. The district court also granted summary judgment to Guaranty on the retaliation claims because Ms. Kawahara's complaints about the CRA loan program were insufficient to qualify as protected opposition and were too remote in time from her termination meeting to infer a causal connection.

**Discussion**

We review de novo a district court's grant of summary judgment. See Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006). Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party," and a fact is material when it may affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although we view the evidence in the light most favorable to the non-movant, a non-movant must point to significantly probative evidence that would allow a trier of fact to find in her favor. Id. at 249–50.

**A. Discrimination Claims**

In an indirect case, this court reviews summary judgment under Title VII and the ADEA using the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). This framework uses a three-step analysis. The

plaintiff first must establish a prima facie case of discrimination.  Id.  If the plaintiff does, the defendant may then demonstrate a legitimate, non-discriminatory reason for its action.  Id.  If the defendant comes forward with a legitimate, non-discriminatory reason, the plaintiff may avoid summary judgment by demonstrating that the defendant's explanation is pretextual.  Id.  The parties do not dispute that the first two steps of the analysis are satisfied.  Ms. Kawahara's claim therefore turns on whether she can establish that the RIF was pretextual.  Pretext may be shown when the employer's reasons for the adverse employment action are so implausible, contradictory, or insubstantial that a trier of fact could find them unworthy of belief.  Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009).

A plaintiff may show pretext in a RIF context by showing (1) her own termination does not accord with the RIF criteria, (2) the RIF criteria were deliberately falsified to terminate her, or (3) that the RIF generally was pretextual.  Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006).  Ms. Kawahara asserts two general theories of pretext.  First, that she was targeted for termination in the RIF because she complained about the CRA loan program.  Second, that her temporary replacement by Mr. Malan demonstrates pretext.

Ms. Kawahara did not establish pretext.  Ms. Kawahara does not provide evidence that (1) her termination did not accord with the RIF criteria, (2) the RIF criteria were deliberately falsified to terminate her, or (3) that the RIF generally was pretextual.  Pippin, 440 F.3d at 1193.  Conversely, there was evidence that her

5

termination was the result of an objective job mapping analysis used to reduce Mr. Dipetro's department's expenses by $1 million. See Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1200 (10th Cir. 2008). Ms. Kawahara disagreed with caps on loans to low- and moderate-income customers for home improvement (she thought the cap should be $10,000 and the bank apparently set the amount at $7,500), and certain business customers. She also disagreed with providing incentives to employees for making these loans to customers, but her expression of concern (even claiming that the bank "was breaking the law") does not constitute significantly probative evidence of pretext concerning her termination. At best, it demonstrates that Ms. Kawahara aired her concerns with management and management did not always act on her advice. Further, the fact that Guaranty had some discretion in formulating the RIF plan and eliminated her position in favor of automating does not render Guaranty's stated basis "unworthy of belief." See Pinkerton, 563 F.3d at 1065.

Nor does Guaranty's temporary replacement of her with Mr. Malan demonstrate pretext given the evidence. If an employee is selected for RIF termination based on the elimination of a position, the employee can show pretext by showing that the position remained a "single, distinct position." Pippin, 440 F.3d at 1194. However, in April 2017, it is uncontroverted that Ms. Kawahara's responsibilities were automated. Mr. Malan's class characteristics are beside the point because he undertook Ms. Kawahara's responsibilities temporarily until her position was automated. See Mercer v. Capitol Mgmt. & Realty, Inc., 242 F. App'x

6

162, 163 (5th Cir. 2007) (finding no prima facie case of age discrimination based on the class characteristics of "merely temporary" employees).[2]

Outside of her theories of pretext, Ms. Kawahara also asserts that the district court ignored Ms. Kawahara's evidence that Mr. Dipetro (1) ordered her to manipulate reports to favor white male managers and (2) made her come into work after jury duty to submit a report early. However, this evidence does not show that the RIF was pretextual, Pippin, 440 F.3d at 1193, and is not evidence that Ms. Kawahara was discriminated against based on her protected class status. See Amro v. Boeing Co., 232 F.3d 790, 798 n.6 (10th Cir. 2000); see also Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1277 (10th Cir. 2010). Finally, Ms. Kawahara cites to the incident where Mr. Dipetro called her an "old lady." However, an isolated or ambiguous comment is insufficient alone to support an inference of discrimination. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir. 2000).

### B. Retaliation Claims

To prove a retaliation claim, a plaintiff must demonstrate that she engaged in a protected activity and that she was subject to a materially adverse action by her employer that was causally connected to her protected activity. See Hansen v. SkyWest Airlines, 844 F.3d 914, 925 (10th Cir. 2016). A causal connection is established where the plaintiff presents evidence "that justif[ies] an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

---

[2] This holding is not precedential, but it is persuasive.

Garrett, 305 F.3d at 1221.  Ms. Kawahara contends that her complaints about the CRA loans were a "protected activity" and that this was the basis for her termination.

Ms. Kawahara's complaints to Mr. Dipetro that the CRA loan program was "not right" was not a protected activity.  Although there are no "magic words" that qualify a complaint as protected activity, the employee must convey to the employer her concern of an employer's unlawful practice.  Hinds, 523 F.3d at 1203.  Ms. Kawahara did not tell Mr. Dipetro that she thought Guaranty's actions were unlawful.

Alternatively, Ms. Kawahara's complaints about the CRA loan program were not causally connected to her termination.  Ms. Kawahara offers no evidence that her complaints about the CRA loan program were causally connected to her termination and she does not provide any evidence of how close in time her last complaint to Mr. Dipetro was to her termination date.

AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge