FILED
United States Court of Appeals
Tenth Circuit

July 21, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TERRENCE D. HOLDEMAN,

     Plaintiff-Appellant,

v.

MICHAEL W. DEVINE,

     Defendant-Appellee,

and

LEON FLINDERS; MEDICAL
GROUP INSURANCE SERVICES;
JAMES W. SMITH; MARY CAROL
JOHNSON; MARIAN BARNWELL;
BILLIE A. DEVINE; GENE L.
JONES; LARRY HERRON,

     Defendants.

No. 07-4235

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:02-CV-00365-PGC)**

---

Brian S. King (Marcie E. Schapp with him on brief), Salt Lake City, Utah, for
Plaintiff-Appellant.

Michael W. Homer (Carl F. Huefner, Jesse C. Trentadue with him on brief) of
Suitter Axland, PLLC, Salt Lake City, Utah, for Defendant-Appellee.

Before **McCONNELL, EBEL**, and **GORSUCH**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff Terrence Holdeman, the representative of a class of employees and dependents of employees who were participants in a self-funded employee benefit plan, appeals the district court's decision that defendant Michael Devine, as trustee of the plan, is not personally liable for outstanding medical claims that the plan did not pay or never fully paid prior to the employer's termination of the plan and declaration of bankruptcy. The district court's judgment was imposed after this court's remand directing the lower court to consider several bases for fiduciary liability that had been raised by the plaintiff but were not specifically addressed by the lower court's initial ruling. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm based on an alternative factual finding by the district court.

## I. BACKGROUND

The underlying facts in this case are set forth in Plaintiff's previous appeal. See Holdeman v. Devine, 474 F.3d 770 (10th Cir. 2007). Plaintiff Holdeman is a class representative of a group of employees and dependents of employees of the State Line Hotel and Silver Smith Casino in Wendover, Nevada. The employees and their dependents were participants in a self-funded employee benefit plan, the

State Line & Silver Smith Casino Resorts Employee Benefits Plan ("the Plan"), that was sponsored and funded by State Line Hotel, Inc., and its related entities ("State Line"), and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff's class was left with significant outstanding medical bills when State Line failed properly to fund the Plan, and then terminated the Plan and filed for bankruptcy. Holdeman, on behalf of himself and a purported class comprised of former beneficiaries of the Plan, sued Michael Devine, in his capacity as the Plan's fiduciary, for violations of ERISA, alleging that Devine failed to assure adequate funding of the Plan to pay all submitted medical claims. Devine was not only the trustee of the Plan and the plan administrator, he also served simultaneously as an officer, and eventually the Chief Executive Officer, of State Line.

Following a bench trial, the district court entered judgment in favor of Devine. Plaintiff Holdeman, on behalf of himself and the class, appealed, and we reversed and remanded for the district court to consider four issues raised by plaintiff but not specifically addressed by the district court in its final order: whether Devine breached his fiduciary duty to the Plan because he should have "(1) resigned as the fiduciary and obtained the appointment of a person or entity who was free from a conflict of interest, (2) hired separate, outside counsel for the Plan, . . . (3) informed the beneficiaries that the Plan was not a reliable source of health benefits and that they might need to make alternative arrangements to

obtain medical coverage[,]" or (4) "considered suing, threatened [to sue], and/or sued State Line on behalf of the Plan for unpaid contributions." Holdeman, 474 F.3d at 782-83.

On remand, the district court denied plaintiff's request to reopen the case for additional discovery or to receive additional evidence because plaintiff had "ample opportunity to be fully and fairly heard" during the evidentiary bench trial. (Aplt. App. 1492.) After receiving supplemental briefing from the parties, the district court issued a thirty-one page order of its findings of fact and conclusions of law and again entered judgment in favor of Devine. To begin with, the district court explained that it had previously determined that Devine did not breach his fiduciary duty by failing to inform plan participants of funding problems with the Plan and it declined to revisit the issue. The district court then determined that Holdeman failed to prove that Devine breached his fiduciary duty by failing to resign and appoint some other person or entity without a conflict of interest, by failing to hire outside counsel for the Plan, or by failing to consider suing, threatening to sue, or actually suing State Line. Finally, the district court found that Holdeman did not prove that it was more likely than not that Devine's alleged breaches actually resulted in losses to the Plan.

## II. STANDARD OF REVIEW

"In an appeal from a bench trial," such as in this case, "we review the district court's factual findings for clear error, and its legal conclusions de novo."

La Resolana Architects, PA v. Reno, Inc., 555 F.3d 1171, 1177 (10th Cir. 2009) (internal quotation omitted).  It is not the role of an appellate court to retry the facts, because "[t]he court below has the exclusive function of appraising credibility, determining the weight to be given testimony, drawing inferences from facts established, and resolving conflicts in the evidence."  State Distributors, Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 411-12 (10th Cir. 1984). That the record supports a view of the evidence that is permissible but contrary to the trial court's findings is not sufficient to warrant upsetting the lower court's findings.  See id. at 412.  Instead, "[f]indings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made." La Resolana Architects, 555 F.3d at 1177 (internal quotation omitted).

### III.  DISCUSSION

Under the liability-creating provision of section 409 of ERISA, any individual or entity "who is a fiduciary with respect to a plan," and breaches any of its fiduciary duties, is liable for "any losses . . . resulting from each such breach" of the fiduciary's duty.  29 U.S.C. § 1109(a).  And section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), provides that beneficiaries of the plan may bring a private cause of action against a fiduciary to enforce section 409.  See LaRue v. DeWolff, Boberg & Assocs., Inc. 128 S.Ct. 1020, 1023 (2008).  In order for an ERISA plaintiff to prevail on such a claim, "there must be a showing of some

causal link between the alleged breach . . . and the loss plaintiff seeks to recover." Allison v. Bank One-Denver, 289 F.3d 1223, 1239 (10th Cir. 2002) (internal quotation and citation omitted).

Under ERISA, trustees have a fiduciary duty to "act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 571 (1985); see also Tassinare v. American Nat'l Ins. Co., 32 F.3d 220, 224 (6th Cir. 1994) (ERISA incorporates the "common law of trusts," so a trustee of an ERISA plan is duty-bound to enforce the obligations of an employer under the plan for the benefit of the plan's beneficiaries.). A trustee must discharge his fiduciary duties prudently and "solely in the interest[s] of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104(a). Although a conflict of interest can be created when corporate officers and directors serve in a dual fiduciary capacity, with simultaneous duties running both to beneficiaries, in their capacity as plan trustees, and to shareholders, as directors of the corporation, "[i]t is well-established that an ERISA fiduciary can 'wear two hats,' meaning an individual can be both an employer and a fiduciary." In re Luna, 406 F.3d 1192, 1207 (10th Cir. 2005) (dicta). "ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." Pegram v. Herdrich, 530 U.S. 211, 225 (2000).

In performing the duty to enforce valid claims, "trustees have a range of options – including suing the delinquent employer, randomly auditing the employer's records, threatening work stoppages, picketing the employer, or similar actions – depending upon the circumstances." Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 917 (2d Cir. 1989). The steps necessary to discharge a duty to collect contributions will depend on the circumstances and there is "no duty to take any particular course of action." Id. As the Department of Labor explained in Field Assistance Bulletin No. 2008-01 (Feb. 1, 2008) (fiduciary responsibility for collection of delinquent contributions), "[i]n determining what collection actions to take, a fiduciary should weigh the value of the plan assets involved, the likelihood of a successful recovery, and the expenses expected to be incurred." The trustee "may take into account the employer's solvency in deciding whether to expend plan assets to pursue a claim." Id. (citing Diduck, 874 F.2d 912).

A trustee breaches his duty when he fails to consider his obligations to collect delinquent contributions. See Diduck, 874 F.2d at 918 (trustees breached their fiduciary duty by "failing even to investigate the possibility of suing"). In discharging his duty, a trustee must consider the appropriateness of legal action to recover plan assets; however, there is no obligation to institute legal action in every circumstance, regardless of the likelihood of success. See id at 917. "Rather, the trustees' duty is to act with 'care, skill, prudence, and diligence,' 29

- 7 -

U.S.C. § 1104(a)(1)(B), in attempting to recover delinquent contributions or in declining to take a particular course of action to recover those contributions." Id.

Assuming *arguendo* that we agree with Holdeman's argument that Devine, acting as the Plan's trustee and fiduciary, breached his fiduciary duty to the Plan by failing adequately to consider appropriate action against State Line to secure funding for the Plan's liabilities, Plaintiff cannot prevail because he has failed to establish that the district court's factual finding on causation—that more likely than not Devine's breaches did not cause the under-funding of the Plan and consequently the Plan's inability to cover participants' medical bills—was clearly erroneous.

During the entire time the Plan was in effect, from May 1999 until it was terminated in December 2001—one month before State Line filed for Chapter 11 bankruptcy protection—State Line faced serious financial difficulties and continuously operated at a loss. Apart from State Line's backlog of unpaid medical claims, State Line juggled many other expenses including monthly gaming taxes (which if not paid would lead to the casino's immediate shutdown), payments on slot machine agreements, bills from food vendors, advertising costs, maintenance costs, payroll, and FICA and payroll taxes. Additionally, State Line made a number of distributions to its owners that Devine, as CEO, considered necessary. Given State Line's financial situation, the district court determined on remand that it was more likely than not that Devine's alleged breaches of his

duties as trustee of the Plan "did not cause losses to the Plan." (App. 1508.) The district court explained that even if Devine, as trustee of the Plan, had pursued aggressive tactics to obtain funding for the Plan, such as threatening to sue or actually suing State Line for its outstanding obligations to the Plan—or if he had appointed outside counsel to represent the Plan or resigned and been replaced by a non-conflicted trustee, as plaintiff suggested he should have done—it was highly unlikely that the Plan would have been able to achieve increased funding from State Line. Indeed, the district court found, as a matter of fact, that "such actions would have made the situation worse for plaintiffs" and that plaintiffs losses "did not stem from any violation of ERISA but rather from other unfortunate business circumstances." (App. 1506, 1513.)

"[G]iven [State Line's] cash flow and the receipts payable," the court explained that it was "highly unlikely that State Line would have agreed to increase funding [to the Plan at the expense of other creditors] because failure to pay other creditors may likely have resulted in the business being shut down," or have led to "suspension of operations, if not to complete failure of the business." (App. 1506-07.) Likewise, it was highly unlikely that State Line would not have made "distributions to the company owners as these distributions were specifically earmarked for tax purposes and were addressed in forbearance agreements worked out between State Line and its creditors to allow the business to stay open." (App. 1507.) And if the Plan had sued State Line, the court found

that "State Line's bankruptcy would [have] more than likely result[ed]," providing plaintiffs "no chance" of ever obtaining recovery for their outstanding unpaid medical claims. (App. 1510.)

Instead of directly attacking the district court's ultimate factual finding—that more likely than not Devine's breaches did not cause losses to the plan—Holdeman has focused his appeal on arguing that the district court erred as a matter of law by misapplying the burden of persuasion. Holdeman, relying on Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992), contends that he demonstrated Devine's breach and a prima facie case of loss, and that the district court erred by not consequently shifting the burden of persuasion to Devine to demonstrate that Devine's breach of his fiduciary duty did not result in a loss to the plan or its participants and beneficiaries. Although Holdeman asserts that he produced evidence of a prima facie case of loss to the Plan, he does not point, in his briefs, to any specific evidence that the Plan's losses were caused by Devine's breach of his fiduciary duty to the Plan.

However, regardless of where the burden of persuasion should have rested,[1] the district court's findings—that it was "more likely than not" that, absent

_____

[1]We recognize that courts have apparently split on the proper evidentiary framework, for analyzing a claim for breach of fiduciary duties under ERISA, after a plaintiff has proved a breach of duty. See, e.g. In re Unisys Savings Plan Litig., 173 F.3d 145, 160 n.23 (recognizing circuit split on the issue of which party bears the burden of proving causation of damages after a breach of fiduciary duty is established).

Devine's breaches, the Plan would not have received more funds; that plaintiffs' losses "did not stem from any violation of ERISA"; and, that the actions now advanced by plaintiffs "would have made the situation worse for plaintiffs"—are dispositive. Even if we assume that plaintiffs established a prima facie case and that the district court should have shifted the burden of persuasion to Devine to disprove causation, as plaintiff asserts, the district court's factual findings of no causation between any fiduciary breach and any loss persuade us that any burden-shifting error by the district court was irrelevant.

Moreover, Holdeman has not explicitly challenged the district court's ultimate factual finding that Devine's breach did not cause the class's losses.[2] But even if he had, the district court's factual findings are not clearly erroneous and are supported by substantial evidence. While Devine, as trustee of the Plan, could have been more aggressive in attempting to get the Plan fully funded, this does not mean that Devine as CEO of State Line would have increased payments to the Plan. As CEO, Devine still had to consider State Line's interest as a company in maintaining continued operations and solvency. And State Line's policy under Devine's leadership was to pay first whatever was necessary to keep

---

[2]In fact, in plaintiff's section of his brief entitled "standard of review," he explicitly disclaims that he challenges the district court's findings of fact. (Aplt. br. at 2 ("[E]ach of the challenged issues in this case involve only the lower court's conclusions of law rather than its findings of fact.").) Generally, when an appellant does not dispute the district court's findings of fact, "we accept the factual findings as articulated by the district court." United States v. Ozbirn, 189 F.3d 1194, 1197 (10th Cir. 1999).

the company operating; and under that policy, "late paying medical claims, although not desirable, was something that happened."  (App. 985.)  Although the district court could possibly have drawn an alternative inference that a more aggressive stance by Devine as trustee of the Plan could have led State Line to increase funding to the Plan before it declared bankruptcy, the district court's finding that aggressive tactics likely would not have achieved greater funding for the Plan or would have forced State Line into declaring bankruptcy—in which case it was unlikely that the Plan or the plan participants, as unsecured creditors, would have been able to obtain any recovery from State Line for their unpaid medical claims—was reasonable.

**IV.**

For the foregoing reasons, the judgment of the district court is AFFIRMED.