**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WANDA J. HARLEY,

            Plaintiff-Appellant,

v.                                                      No. 10-6074
                                               (D.C. No. 5:08-CV-00148-M)
JOHN E. POTTER, Postmaster                            (W.D. Okla.)
General, United States Postal Service,

            Defendant-Appellee.

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, and **PORFILIO**, Senior
Circuit Judge.

---

Wanda J. Harley appeals the district court's judgment, after a bench trial,

that the United States Postal Service's termination of her employment was not in

violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§ 623(a)(1).  Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court did not apply incorrect legal standards and did not clearly err in concluding that age was not the but-for cause of the termination. Accordingly, we must affirm its judgment in favor of the Postal Service.

## I. Background

Ms. Harley was forty-six years old during the events underlying this case. At the beginning of April 2006, she left her position as a substitute rural carrier at the Blackwell, Oklahoma post office to become a city carrier at the Fairfax, Oklahoma, post office. In her new position, she had to complete a ninety-day probation period, which included reviews at thirty and sixty days.

On April 15, 2006, Anthony Jansson became the Fairfax postmaster. Just before Ms. Harley's thirty-day review, Mr. Jansson's supervisor told him to do an all-day observation of her performance. Mr. Jansson asked Scott Shepard, a supervisor at another post office, to do the observation, which Mr. Shepard did on May 2, 2006. According to Mr. Shepard, while he was at the Fairfax post office, Mr. Jansson told him that he (Mr. Jansson) needed somebody younger and faster in Ms. Harley's position.

For the thirty-day review, Mr. Jansson gave Ms. Harley "satisfactory" ratings for dependability, work relations, and work methods, and "unacceptable" ratings for work quality, work quantity, and personal conduct. Mr. Jansson testified that he based the quality and quantity ratings on his observations of her speed in sorting the mail and getting out of the office to deliver it, and the

conduct rating on his perception that she was not flexible when asked to fill in at another post office. Ms. Harley accepted the review.

On Friday, June 9, 2006, Mr. Jansson gave Ms. Harley her sixty-day review. He was on annual leave that day, but was in the office to assemble a new desk. After Ms. Harley returned from her route and clocked out, Mr. Jansson asked her to come in to his office for the review. When she said she had clocked out, he told her he would add the time to her card. In the review, he told her that she was improving, but he gave her the same ratings as the thirty-day review. Ms. Harley disagreed with the ratings because they did not reflect Mr. Jansson's statement that she was improving. She refused to sign the review form. She testified that she told Mr. Jansson that they should sit down on Saturday or Monday (when they were both on the clock) to go over the evaluation.

The parties have different viewpoints about the end of the review. In Ms. Harley's view, the meeting was over and she was off the clock, so she left. "Then he had nothing more to say, and I had nothing more to say, and I left to go home." Aplt. App. at 1044-45. In contrast, Mr. Jansson testified that she left before the end of the review, "right in the middle of me trying to talk to her about things we can do to help." *Id.* at 769. He stated that she left "in a hurried way" and was "pretty upset." *Id.* at 765. "For lack of a better term, she stormed out of the office . . . and just left." *Id.* Ms. Harley worked her normal schedule the next two work days, but on the third work day, June 13, 2006, Mr. Jansson terminated

-3-

her employment.  The termination letter informed her that she "fail[ed] to achieve employment expectations during [her] probationary period."  *Id.* at 1320. Eventually the Postal Service filled her position with a thirty-two-year-old.

Ms. Harley brought suit under the ADEA.  Her claim went to a bench trial. At trial, Mr. Jansson testified that he was the sole decisionmaker with regard to terminating Ms. Harley's employment, and he fired Ms. Harley because "of what she did during the 60-day evaluation," not because of her performance.  *Id.* at 768.  He denied ever telling Mr. Shepard that he wanted someone younger for the position.  Ms. Harley testified that she left because the meeting was over and she was off the clock, and she denied walking hurriedly or storming out of the office. She asserted that the termination was because of her age.  Both sides presented witnesses and evidence favoring their respective positions.[1]  Ultimately the district court decided in favor of the Postal Service, stating:

---

[1]     During the litigation, Ms. Harley sought production of her time cards, but the Postal Service did not produce them, stating that they could not be found. Ms. Harley sought sanctions due to spoliation of evidence, requesting that the district court make an adverse-inference finding against the Postal Service.  The court held a hearing on the issue just before the trial.  Ultimately, the court concluded that the Postal Service's loss of the time cards was "clearly negligent," but the evidence did "not support a finding that defendant intentionally, in bad faith, lost or destroyed the time cards."  Aplt. App. at 582.  Thus, the court declined to make an adverse-inference finding.

Ms. Harley's opening brief contains a two-sentence reference, without citation, to the denial of the sanctions motion.  Because she fails to present any developed argument regarding the denial, we consider any challenge to it to be waived.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

> While Harley's age was one of many reasons, including the fact that Harley left her sixty day evaluation and Harley was not fast enough, for her termination, Harley has not proved by a preponderance of the evidence that her age was the "but for" cause of her termination. Harley simply has not shown that her age was <u>the</u> reason for her termination.

Aplt. App. at 587. Ms. Harley appeals.

## II. Analysis

"In an appeal from a bench trial, such as in this case, we review the district court's factual findings for clear error, and its legal conclusions de novo." *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir. 2009) (quotations omitted).

A. *Legal Analysis*

Ms. Harley argues that the district court committed legal error by improperly applying the teachings of *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009). We address this issue first because "[t]he reviewing court is not bound by the clearly erroneous standard when the trial court has based its findings on an erroneous view of the law." *Valley Improvement Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1123 (10th Cir. 1997).

In *Gross*, the Supreme Court held that the ADEA does not recognize a "mixed motives" discrimination claim. "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." 129 S. Ct. at 2350. Therefore, "[a] plaintiff must prove, by a preponderance of the evidence (which may be direct or

circumstantial), that age was the 'but-for' cause of the challenged adverse employment action." *Id.* at 2351. "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 2352.

Because "[t]he Tenth Circuit has long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA," *Gross* did not change this court's approach in ADEA cases. *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Further, it is well-established in this circuit that the "but-for" standard does not require a plaintiff to show that age was the employer's sole motivating factor. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (citing *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985)). "Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Jones*, 617 F.3d at 1277.

In its conclusions of law, the district court recited the *Gross* standard. Then, in deciding against Ms. Harley, it stated, "[w]hile Harley's age was one of many reasons, including the fact that Harley left her sixty day evaluation and Harley was not fast enough, for her termination, Harley has not proved by a preponderance of the evidence that her age was the 'but for' cause of her termination." Aplt. App. at 587. It concluded, "Harley simply has not shown that

her age was <u>the</u> reason for her termination." *Id.* Ms. Harley argues that the emphasis on "the" in the concluding sentence means that the district court improperly required her to prove that her age was the sole motivating factor in the termination, not the but-for cause.

We do not agree with Ms. Harley's suggestion that the district court's emphasis on "the" in "the reason" implicitly, and necessarily, equates to stating "the sole reason." The district court properly identified *Gross* as the controlling legal standard. Just before the sentence emphasizing "the," the court specifically found that "Harley has not proved by a preponderance of the evidence that her age was the 'but for' cause of her termination." Aplt. App. at 587. And with the exception of the emphasis, the final sentence encapsulates *Gross*'s teaching that "[t]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross*, 129 S. Ct. at 2350. In sum, there is nothing to show that the district court did not understand how to apply the "but-for" standard. Accordingly, we decline to reverse the judgment on the ground that the district court applied incorrect legal principles.

B.     *Sufficiency of the Evidence*

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 153 (2000). "[A] finding of intentional discrimination is a finding of fact." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Therefore, it is subject to the "clearly erroneous" standard of review. *See id.* "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). But

> [t]his standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 573-74 (quotation and citation omitted). "[W]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Manning v. United States*, 146 F.3d 808, 813 (10th Cir. 1998).

Ms. Harley argues that the district court found three reasons for the termination: her age, that she left the sixty-day evaluation,[2] and that she was not

---

[2] Ms. Harley points out that the district court did not make any findings that

(continued...)

-8-

fast enough in performing the job. She further asserts that the evidence does not support the non-age-related findings. Therefore, she concludes, age is the only reason supported by the evidence.

We agree with Ms. Harley that the evidence does not support the finding that her speed was a reason underlying the termination of her employment. Mr. Jansson, the sole decisionmaker, testified that the termination decision was based only on Ms. Harley's conduct with regard to the sixty-day review. In follow-up questioning, he specifically confirmed that the termination was not due to her performance. While Ms. Harley's lack of speed may have been an issue underlying the ratings in the sixty-day evaluation, Mr. Jansson's testimony precludes finding that speed was a reason for the termination. Thus, the district court clearly erred in finding to the contrary.

But discounting the performance factor still leaves two reasons: age and her conduct with regard to the sixty-day review. Ms. Harley asserts that the evidence does not support a finding that the latter reason caused the termination because "Harley's 60-day evaluation had concluded when Harley left" and "Jansson did not tell Harley she could not leave or demand she return." Aplt. Br.

---

[2](...continued)
"Harley left her 60-day evaluation 'hurriedly' or 'stormed out' of Jansson's office." Aplt. Br. at 31-32. But it appears that, in the district court's view, what was important was not necessarily the *way* that Ms. Harley left the review, but the *fact* that she left. *See* Aplt. App. at 587 (finding as one of the "many reasons" for the termination "the fact that Harley left her sixty day evaluation").

at 30. She also points out that in the many documents Mr. Jansson filled out regarding her termination, he did not assert that she stormed out of his office.

These arguments, however, miss the point. First, it appears that the district court based its decision on the fact that Ms. Harley left the review, not the *way* she left it. Second, Ms. Harley views the evidence in the light most favorable to her, not the light most favorable to the Postal Service. The Postal Service presented evidence that contradicted Ms. Harley's evidence.[3] "That the record supports a view of the evidence that is permissible but contrary to the trial court's findings is not sufficient to warrant upsetting the lower court's findings." *Holdeman*, 572 F.3d at 1192. "[E]very trial is replete with conflicting evidence, and in a bench trial, it is the district court, which enjoys the benefit of live testimony and has the opportunity firsthand to weigh credibility and evidence, that has the task of sorting through and making sense of the parties' competing narratives." *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007).

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

---

[3] In addition to Mr. Jansson's testimony, the Postal Service presented the testimony of another Postal Service employee that she was outside the Postmaster's office during the sixty-day review, she heard a slamming door from the office, Ms. Harley walked out past her, and she got the impression that Ms. Harley was upset. It also presented the testimony of Mr. Jansson's former supervisor that Mr. Jansson had consulted with him about how to respond to the situation. The former supervisor and four other supervisory- or managerial-level Postal Service employees testified that they would terminate the employment of a probationary employee who walked out of a review.

"[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575. The Postal Service's evidence suffers from weaknesses, but Mr. Jansson's story is facially plausible. At best the documents undermine his credibility rather than fatally contradict his testimony. Thus, we cannot conclude that it was clear error for the district court to accept the Postal Service's position rather than Ms. Harley's. And once the court accepted the Postal Service's position with regard to the end of the sixty-day review, it was not clearly erroneous for it to find that age was not the but-for cause of the termination.

### III. Conclusion

The clearly erroneous "standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.* at 573. Where "the factual issue fairly could be decided for either party," the district court's findings cannot be clearly erroneous. *Id.* at 581 (Powell, J., concurring). The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge