**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MVT SERVICES, LLC, d/b/a MESILLA
VALLEY TRANSPORTATION,

    Plaintiff - Appellee,

v.

GREAT WEST CASUALTY COMPANY,

    Defendant - Appellant.

No. 23-2070

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:18-CV-01128-GJF-GBW)**

_____

Dan L. Worker, Lewis Brisbois Bisgaard & Smith LLP, Chicago, IL, for Defendant-
Appellant

Chance Fletcher, formerly with Haynes & Boone, LLP, Dallas, TX, (Benjamin L.
Mesches, David P. Bender, Haynes & Boone, LLP, Dallas, TX, and Caroline Hurtado
Ford, Haynes & Boone, LLP, Costa Mesa, CA on the briefs), for Plaintiff-Appellee

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

The district court maintains the best position to assess witnesses' credibility,

draw appropriate inferences, and weigh the evidence before it. We will not second

guess the district court's factual findings when they find support in the record. This

litigation arises from a prior state court personal injury lawsuit where Defendant Great West Casualty Company ("Great West") breached its duty to defend Plaintiff MVT Services, LLC ("MVT"). After a bench trial, the district court found Great West's breach proximately caused MVT to incur damages, so the district court awarded MVT damages and attorney fees. Great West appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

MVT purchased a workers' compensation and employers' liability policy ("WC/EL Policy") from Great West for coverage from January 1, 2013, through January 1, 2014. The WC/EL Policy required Great West to defend MVT against any suit seeking the payable benefits of the WC/EL Policy. The WC/EL Policy limited indemnity for bodily injury by accident to $1,000,000 per accident.

In January 2013, MVT entered into a Staff Leasing Agreement with OEP Holdings, LLC ("OEP"). Under the agreement, MVT transferred its Texas-based employees, including driver Lawrence Parada, to OEP. MVT then leased OEP's employees, including Parada. MVT also purchased from Crum & Forster Specialty Insurance Company ("C&F") a non-subscriber insurance policy ("C&F Policy") for a coverage period from January 3, 2013, to January 3, 2014. The C&F Policy provided employers' liability coverage but did not provide workers' compensation coverage.

On August 13, 2013, MVT contacted Great West to terminate its Texas Coverage under the WC/EL Policy. On August 14, 2013, Great West processed the termination and on August 15, 2013, filed the notice of termination with the Texas

2

Department of Insurance, Division of Workers' Compensation ("TDI"). Ordinarily, termination becomes effective 30 days after TDI receives notice. But the WC/EL Policy termination date fell on Saturday, September 14, 2013, so the termination date extended to Monday, September 16, 2013, under Texas Government Code § 311.014(b).

The day before coverage termination, on September 15, 2013, MVT's semi-tractor trailer crashed, killing Parada. Parada's widow filed a beneficiary claim for death benefits with the TDI. She also filed suit against MVT in a Texas state district court, claiming negligence and gross negligence ("Parada lawsuit"). On October 28, 2013, MVT tendered defense of the Parada lawsuit to Great West under the WC/EL Policy, but the next day, Great West advised MVT to seek coverage for the Parada lawsuit with C&F. On November 6, 2013, Great West counsel, David Schubert, and MVT counsel, Todd Silberman, discussed that C&F agreed to defend MVT and Great West planned to deny MVT's claim. On December 10, 2013, Great West formally refused to defend MVT's claim because it believed the underlying claim arose from an incident outside the coverage period under the WC/EL Policy.

C&F agreed to defend MVT through its coverage and appointed Robert Skipworth in the Parada lawsuit. MVT filed its original answer in the Parada lawsuit on November 14, 2013, and did not invoke the exclusive remedy of workers' compensation benefits under Texas Labor Code § 408.001(a) ("Exclusive Remedy"). This statutory remedy bars employees covered by workers' compensation benefits from initiating simple negligence claims against an employer. Because the C&F

Policy did not include workers' compensation coverage, it did not enable MVT to invoke the Exclusive Remedy. Around May 2014, MVT separately retained Steve Blanco to help Skipworth defend the case. On April 17, 2015, the Parada lawsuit plaintiffs informed MVT that damages could exceed $25 million and demanded $12.5 million to settle the lawsuit.

In late April 2015, MVT retained Anderson Kill P.C. to sue Great West for the denial of coverage. Anderson Kill determined that because Texas Government Code § 311.014 extended the effective termination date under the policy, MVT had Texas workers' compensation coverage the day of the accident and thus Great West erred in denying coverage. Based on this information, on May 12, 2015, MVT sought to invoke the Exclusive Remedy in the Parada lawsuit, a request that the Texas district and appellate courts denied. MVT also filed a declaratory judgment action against Great West for a judicial declaration that the WC/EL Policy covered the accident. Anderson Kill notified Great West, asserting the WC/EL Policy covered the accident, and on May 22, 2015, Great West reversed the coverage denial, agreed to participate in MVT's defense in the Parada lawsuit, and appointed Carlos Rincon to represent MVT. On June 4, 2015, Great West formally certified that the WC/EL Policy covered the accident on September 15, 2013. The Parada lawsuit ultimately settled during trial for $3,500,000, which included C&F's policy limit of $1,000,000, Great West's policy limit of $1,000,000, an unrelated excess insurer's contribution of $1,000,000, and $500,000 from MVT. MVT's contribution included $250,000 to the settlement in satisfaction of the C&F Policy and another $250,000 in contribution to

the settlement.  Great West also paid Texas workers' compensation death benefits as part of the settlement.

MVT then sued Great West for breach of contract and violation of Chapter 542 of the Texas Insurance Code.[1]  MVT moved for summary judgment.  The district court granted summary judgment to MVT on the breach of contract claim on the elements of (1) existence of a valid contract, (2) performance by MVT, (3) Great West's duty to defend arising on October 28, 2013, and (4) Great West's breach of its duty to defend.  But the district court found genuine factual disputes over whether the breach caused damages to MVT.  The district court also granted summary judgment to MVT on its claim that Great West violated the Prompt Payment of Claims Act under the Texas Insurance Code, but the claim proceeded to trial to determine damages.

During the bench trial, the district court heard testimony from Silberman, Skipworth, and Blanco.  The district court also heard testimony from Dean Rigg, Chief Financial Officer at MVT.  After reviewing the testimony and evidence at trial, the district court found by a preponderance of the evidence that had Great West defended MVT under the WC/EL Policy in 2013, its retained counsel would have invoked the Exclusive Remedy defense and diverted the simple negligence claims to TDI.  The district court also found a low likelihood that the Parada plaintiffs would

---

[1] MVT also filed suit against Great West for violating Chapter 541 of the Texas Insurance Code but later dismissed the claim.

have obtained a jury verdict on the gross negligence claims. So, the district court found that any gross negligence claims the Parada plaintiffs pursued would not have exceeded the $1 million policy limit. For these reasons, the district court found that, if Great West hadn't breached its contractual duty to defend, MVT would not have invoked the C&F Policy, paid money toward the settlement, or retained Blanco.

Based on these factual findings, the district court found that MVT incurred the following damages because of Great West's breach: (1) the $250,000 retention paid under the C&F Policy; (2) the $250,000 that MVT contributed to the Parada lawsuit settlement; and (3) $41,476.84 in attorney fees paid to Blanco. The district court awarded these damages and attorney fees for this case to MVT.

Great West appeals the monetary award to MVT for two reasons: (1) the district court erred in finding that the Parada lawsuit would have resolved within the policy limit and (2) the contractual breach did not proximately cause the damages. "[I]n an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." Harmon v. City of Norman, 61 F.4th 779, 787 (10th Cir. 2023) (quoting Lippoldt v. Cole, 468 F.3d 1204, 1211 (10th Cir. 2006)). We conclude that Great West fails to show the district court committed legal error or clearly erred in its fact findings.

A.

Great West first argues that the district court erred in finding that the Parada lawsuit would have resolved within the policy limit because Parada plaintiffs demanded $12.5 million to settle and the Parada lawsuit, in fact, did not settle within

6

the policy limit.[2]  Under Texas law, an insured may not recover damages more than the policy limit for breach of the duty to defend, unless (1) the claim would have resolved within the policy limits or (2) "the insurer breached its duty of good faith and fair dealing."[3]  United Servs. Auto. Ass'n v. Pennington, 810 S.W.2d 777, 784 (Tex. App. 1991) (citing Emps. Nat'l Ins. Corp. v. Zurich Am. Ins. Co., 792 F.2d 517, 520 (5th Cir. 1986)).  MVT does not argue that Great West breached its duty of good faith and fair dealing, so we address whether the Parada lawsuit would have resolved within the policy limits had Great West not breached its duty to defend.

Although the Parada lawsuit settled above the policy limit, the district court found the evidence established that the Parada lawsuit would have settled within the policy limit had Great West not breached.  More specifically, the district court found that, absent Great West's breach, (1) MVT would have invoked the Exclusive Remedy, transferring the simple negligence claim to TDI, and (2) the remaining gross negligence claim would have resolved within the policy limit.  Great West argues that these factual findings lack support in the record.  We disagree.

---

[2] Great West presents its argument as a legal issue, but its argument constitutes a challenge to the district court's factual findings.  The district court found that the Parada lawsuit would have settled within the policy limits absent Great West's breach.  The district court based this factual finding on two additional factual findings: (1) MVT would have invoked the Exclusive Remedy, transferring the simple negligence claim to TDI, and (2) the remaining gross negligence claim would have resolved within the policy limit.

[3] Texas law governs the WC/EL Policy, and the parties do not contest its application.

7

In reviewing the district court's findings after a bench trial for clear error, we do not retry the facts. The district court "has the exclusive function of appraising credibility, determining the weight to be given testimony, drawing inferences from facts established, and resolving conflicts in the evidence." Holdeman v. Devine, 572 F.3d 1190, 1192 (10th Cir. 2009) (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 411–12 (10th Cir. 1984)). So clear error occurs only when the record does not support the district court's factual findings or when, after reviewing the record, "we have the definite and firm conviction that a mistake has been made." Id. (quoting La Resolana Architects, PA v. Reno, Inc., 555 F.3d 1171, 1177 (10th Cir. 2009)). "[W]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." Mathis v. Huff & Puff Trucking, Inc., 787 F.3d 1297, 1305 (10th Cir. 2015) (quoting Sw. Stainless, LP v. Sappington, 582 F.3d 1176, 1183 (10th Cir. 2009)). Thus, where two permissible views of the evidence exist, "the factfinder's choice between them cannot be clearly erroneous." Id. at 1306 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

Great West argues that the district court clearly erred in concluding that, absent the breach, MVT would have invoked the exclusive remedy. Great West relies on a few specific pieces of record evidence. Great West first argues that testimony showed that MVT tried to cancel the WC/EL Policy on January 1, 2013, obtained the C&F Policy effective January 3, 2013, and intended to defend future lawsuits as a nonsubscriber. But this evidence does not undermine the district court's

8

finding because it, at most, shows MVT's intent before August 13, 2013, not its intent had Great West not denied the coverage. Great West also contends that the record shows that MVT never intended to use the Exclusive Remedy because MVT filed its answer—without asserting the Exclusive Remedy—on November 14, 2013, and Great West didn't deny the claim until December 10, 2013. But this argument ignores other record evidence supporting the district court's finding that showed: MVT spoke with Great West on October 28, 2013, and November 6, 2013, before filing its answer, and Great West informed MVT it would deny the claim. So rather than demonstrate that the district court erred, the record reinforces its finding that had Great West not denied the claim, MVT would have invoked the Exclusive Remedy.

Great West further argues that evidence shows MVT avoided pursuing the Exclusive Remedy because it wanted to avoid premium expenses. MVT paid no premiums to Great West during 2013, and MVT discussed in or about April 2014 whether it wished to pursue a lawsuit against Great West because it did not wish to incur premium expenses. One permissible view of this evidence suggests that MVT intended not to pursue the Exclusive Remedy so it could avoid premium expenses. But another, equally permissible view is that MVT had concerns about premium expenses independent of the Exclusive Remedy, and the district court chose to adopt that view. "That the record supports a view of the evidence that is permissible but contrary to the trial court's findings is not sufficient to warrant upsetting the lower court's findings." Holdeman, 572 F.3d at 1192 (citing State Distribs., Inc., 738 F.2d at 412). Thus, viewing the evidence in the light most favorable to the district court's

9

ruling, the district court did not clearly err in finding that MVT would have invoked the Exclusive Remedy had Great West not denied coverage in the fall of 2013.[4]  See Stephens Indus., Inc. v. Haskins & Sells, 438 F.2d 357, 360 (10th Cir. 1971) ("The burden on appellants to prove clear error . . . is a heavy one.").

We next consider whether the district court clearly erred in finding that the gross negligence claim would have resolved within the policy limit.  Great West asserts that the gross negligence claim would not have resolved within the policy limit because the gross negligence claim still existed at the start of the Parada trial, allegations existed that the driver in the accident fell asleep because of medication for a medical condition, the driver lacked adequate training, and Parada had two experts to support these allegations.[5]  But the district court properly weighed both

---

[4] Great West also asserts that MVT knew about Great West's legal error before April 2015.  The district court did not make a factual finding addressing when MVT learned about the legal error because this factual issue related to mitigation of damages and Great West did not assert the affirmative defense of failure to mitigate. Under Texas law, we calculate damages at the time of breach, and damages may increase or decrease after the breach, for instance when the injured party mitigates damages.  JCB, Inc. v. Horsburgh & Scott Co., 597 S.W.3d 481, 486, 486 n.3 (Tex. 2019).  Although the injured party has the duty to mitigate damages, the party in breach has the burden of proving that the injured party failed its duty to mitigate and that such failure increased the damages.  U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc., 104 S.W.3d 284, 293 (Tex. App. 2003) (citing Geotech Energy Corp. v. Gulf States Telecomm. and Info. Sys., Inc., 788 S.W. 2d 386, 290 (Tex. App. 1990)). Great West failed to satisfy its burden because it did not assert that MVT failed to mitigate.

[5] Great West also argues that the district court erred in determining that the WC/EL Policy covered gross negligence liability.  Great West did not present this argument before the district court nor did Great West argue for plain error on appeal, so we decline to consider it.  See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011) (citing United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th

10

this evidence and other evidence (that Great West does not discuss) MVT presented which showed MVT's minimal exposure on the gross negligence claim. See Anderson, 470 U.S. at 575 ("But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). We decline to accept Great West's efforts to retry this case when the district court made a permissible finding on the gross negligence claim given the evidence. See Mathis, 787 F.3d at 1305–07. Because the district court did not clearly err in its factual findings, MVT may recover damages above the policy limit.

Great West also argues that the district court erred in denying its motion to compel discovery. Great West asserts that MVT improperly used privilege to hide evidence that MVT knew that it could invoke the Exclusive Remedy but chose not to.

When considering arguments, we rely on the parties to provide a record or appendix sufficient to allow meaningful appellate review. 10th Cir. R. 30.1(B)(1). But when a party fails to provide such a record, as required by Tenth Circuit Rules of Appellate Procedure 10.4(B) and 30.1(B)(1), we regularly decline to consider a claim relying on the missing record evidence. Burnett v. Sw. Bell Tel., L.P., 555 F.3d 906, 910 (10th Cir. 2009); see also 10th Cir. R. 10.4(B) ("When the party asserting an

---

Cir. 2007)) (holding an argument is waived when the appellant forfeits the argument and fails to argue for plain error).

issue fails to provide a record or appendix sufficient for considering that issue, the court may decline to consider it.").  Great West failed to provide an appendix containing Great West's motion to compel, MVT's response, and the district court's denial of the motion to compel.  Because of Great West's failure, we lack an adequate record to consider this issue on appeal and decline to do so.  D. K. v. United Behav. Health, 67 F.4th 1224, 1236 n.6 (10th Cir. 2023) ("Under the Tenth Circuit Rules of Appellate Procedure, appellants must provide an appendix 'sufficient for considering and deciding the issues on appeal.'" (quoting 10th Cir. R. 30.1(B)(1)));  Scott v. Hern, 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm." (citing Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979–80 (10th Cir. 1992); Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998))); see also Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1189 (10th Cir. 2018) ("The duty to file an appendix that complies with the requirements set out by the Federal Rules of Appellate Procedure and our Local Rules falls squarely on the appellant." (citing Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1474 (10th Cir. 1997); Fed. R. App. P. 30(a)(1); 10th Cir. R. 30.1(b)(1))).  This Circuit's "rules are not empty gestures," Travelers Indem. Co. v. Accurate Autobody, Inc., 340 F.3d 1118, 1121 (10th Cir. 2003), and an appellant who fails to comply, does so at its own risk because we regularly enforce our Rules.  Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 955 (10th Cir. 1996) (citing Deines, 969 F.2d at 978–79).

B.

Great West also contests the district court's damage award. Great West argues that the district court erred in awarding damages to MVT because its contractual breach did not proximately cause MVT's damages and because it could not foresee MVT's damages.

Under Texas law, to succeed on a breach of contract claim, the plaintiff must prove (1) a valid contract exists; (2) the plaintiff performed as the contract required; (3) the defendant breached the contract; and (4) the breach resulted in damages to the plaintiff. USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (citing Tamuno Ifiesimama v. Haile, 522 S.W.3d 675, 685 (Tex. App. 2017)). Recoverable damages include direct and consequential damages. Arthur Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997) (citing Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 163 (Tex. 1992)). To recover direct damages, a party must show that the damages are "natural, probable, and foreseeable consequence[s] of the breach." MJS & Assocs., L.L.C. v. Master, 501 S.W.3d 751, 757 (Tex. App. 2016) (citing Mead v. Johnson Grp., Inc., 615 S.W.2d 685, 687 (Tex. 1981)). A defendant is "conclusively presumed" to have foreseen direct damages because direct damages are a "necessary and usual result of" and "flow naturally and necessarily from" the contractual breach. Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC, 576 S.W.3d 362, 373 (Tex. 2019) (quoting Arthur Anderson, 945 S.W.2d at 816). In contrast, "[c]onsequential damages 'result naturally, but not necessarily from [the contractual breach], and are not 'the usual result of the

13

wrong.'"  Id.  (quoting Arthur Anderson, 945 S.W.2d at 816).  To recover consequential damages, the parties must have contemplated the damages at the time of the contract—so the damages "must be foreseeable and directly traceable to the wrongful act and result from it."  Stuart v. Bayless, 964 S.W.2d 920, at 921 (citing Mead, 615 S.W.2d at 687; Arthur Andersen, 945 S.W.2d at 816).

With these principles in mind, we address in turn whether the district court erred in awarding the following damages: (1) the $250,000 self-insured retention under the C&F Policy; (2) the $250,000 MVT contributed to the Parada litigation; and (3) the $41,476.84 in attorney fees to Steve Blanco.

1.

Great West first argues that it could not foresee the C&F Policy damages because MVT contracted and secured additional benefits with C&F before the breach.  A foreseeable loss flows from "the ordinary course of events" of the contractual breach or from "special circumstances . . . that the party in breach had reason to know."  Basic Cap. Mgmt., Inc. v. Dynex Com., Inc., 348 S.W.3d 894, 902 (Tex. 2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 351 (1981)).  "A loss that is not the 'probable' consequence of the breach, from the breaching party's perspective at the time of contracting, is not foreseeable."  Signature Indus. Servs., LLC v. Int'l Paper Co., 638 S.W.3d 179, 186 (Tex. 2022) (quoting Mead, 614 S.W.2d at 687).  The C&F Policy's damages directly flow in the ordinary course of events from Great West's breach.  Great West could foresee at the time of contracting that if Great West failed to provide a defense, MVT would have to defend itself.  After all,

14

"once an insurer has breached its duty to defend, the insured is free to proceed as [it] sees fit; [it] may engage [its] own counsel and either settle or litigate, at [its] option." Ideal Mut. Ins. Co. v. Myers, 789 F.2d 1196, 1200 (5th Cir. 1986) (citing Great Am. Indem. Co. v. Corpus Christi, 192 S.W. 917, 919 (Tex. App. 1946), writ ref'd n.r.e.). MVT invoking insurance coverage elsewhere to defend itself is a foreseeable probable result.

Next, Great West provides a factual argument for why the contractual breach did not cause the damages MVT incurred in invoking the C&F Policy: MVT always intended to pursue litigation as a nonsubscriber, so its breach did not cause the C&F Policy damages.[6]  But this argument conflicts with the district court's factual findings, which—as we discuss above—were not clearly erroneous.  This conclusion requires us to accept the district court's finding that had Great West not breached, MVT would have invoked the Exclusive Remedy and the Parada plaintiffs would have settled the remaining gross negligence claims within Great West's policy limits. Based on these factual conclusions and evidence, the district court also found that MVT would not have activated or invoked its C&F Policy because the WC/EL Policy would have covered MVT's liability.

Great West argues that the district court clearly erred in this factual finding. Great West points to evidence that MVT tendered the C&F Policy's defense before

---

[6] A nonsubscriber is an entity that doesn't subscribe to the TDI workers' compensation program as an alternative to litigation for employees' negligence claims.

15

Great West's official denial and points to testimony showing that MVT intended to pursue litigation as a nonsubscriber. But once again, Great West misses the mark in establishing clear error. The record shows that MVT tendered the C&F Policy's defense after Great West informed MVT it would deny coverage, and testimony addressing intent showed MVT's intent before the accident and Great West's contractual breach. The record also shows that the C&F Policy applied only in excess of WC/EL Policy coverage. As this record evidence shows, Great West has, at most, shown that the evidence could support two plausible inferences—which requires us to base our analysis on the finding made by the district court. For these reasons, the district court did not err in awarding MVT the damages it incurred in invoking the C&F Policy.

2.

The district court also did not err when it awarded MVT damages for its $250,000 settlement contribution. Great West argues that the breach did not proximately cause MVT's settlement damages. Great West once again asserts that the district court clearly erred in finding that MVT would have invoked the Exclusive Remedy and that the gross negligence claim would have settled under the policy limits. Because we have held the district court did not clearly err in these factual findings, we reject Great West's argument that the breach did not cause MVT to incur direct damages from its settlement contribution. "But for" Great West's breach, the WC/EL Policy would have covered the entire settlement, and thus MVT would not have needed to financially contribute to the settlement. See Khechana v.

El-Wakil, 661 S.W.3d 425, 431 (Tex. App. 2023) (citing Ryder Integrated Logistics, Inc. v. Fayette Cnty., 453 S.W.3d 922, 929 (Tex. 2015)) (discussing "but for" causation).  MVT's settlement contribution flowed naturally and necessarily from the breach, and the district court's award of the amount of MVT's settlement contribution restores the benefit of the bargain.  See Signature Indus. Servs., 638 S.W.3d at 186 ("Direct damages often include restoration of 'the benefit of a plaintiff's bargain.'" (quoting Quigley v. Bennet, 277 S.W.3d 51, 56 (Tex. 2007) (Brister, J., concurring))); see also, e.g., Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124, 1127 (5th Cir. 1993) ("It is well-settled in Texas that when an insurer breaches a duty to defend its insured, it is bound, in subsequent proceedings, by a settlement or judgment rendered against the insured." (citing Rhodes v. Chicago Ins. Co., 719 F.2d 116, 120 (5th Cir. 1983))).

3.

We turn to whether the district court erred in awarding Blanco's attorney fees. Great West argues the district court erred because MVT voluntarily incurred Blanco's attorney fees after C&F refused to cover his services.[7]  In Great West's view, MVT would have retained Blanco regardless of any breach, so the breach did

---

[7] Great West also argues that MVT had no authority to retain a fourth lawyer, but Great West has cited no legal authority to support this proposition.  We will not consider it.  See Phillips v. Calhoun, 956 F.2d 949, 953–54 (10th Cir. 1992) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (quoting Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990))).

not proximately cause the damages. But when an insurer breaches its duty to defend, "the insurer is *bound* . . . [to pay] the expenses of the insured in defending the suit, including reasonable attorneys' fees." Tex. United Ins. Co. v. Burt Ford Enters., Inc., 703 S.W.2d 828, 835 (Tex. App. 1986) (emphasis added). An insurance policy grants the insurer the right to control the defense, including the authority to select the attorney who will defend the claim, see Unauthorized Prac. of Law Comm. v. Am. Home Assur. Co., 261 S.W.3d 24, 42 (Tex. 2008), but the insurer forfeits this right when it breaches its duty to defend, Ideal Mut. Ins., 789 F.2d at 1200 (citing Great Am. Indem., 192 S.W.2d at 919). Great West stipulated that it "lost its ability to control, influence, or object to the manner in which MVT chose to staff its defense." "Absent special circumstances, a stipulation binds the parties who make it." Parks v. Am. Warrior, Inc., 44 F.3d 889, 894 (10th Cir. 1995) (citing Vallejos v. C.E. Glass, Co., 583 F.2d 507, 510 (10th Cir. 1978)). So MVT was free to retain an attorney of its choice to defend the Parada lawsuit, and Great West must reimburse MVT for such expenses so long as the attorney fees are reasonable. See id.; see also Burt Ford, 703 S.W.2d at 835. Great West does not argue that Blanco's attorney fees are unreasonable, so we reject its argument that the breach did not proximately cause MVT to incur the attorney fees.

The district court also awarded statutory penalty interest on Blanco's attorney fees as required under the Texas Insurance Code Chapter 542's prompt payment provision. Great West asserts that the district court erred in reaching this conclusion

18

because the Texas Insurance Code Chapter 542's prompt payment provision does not apply to the WC/EL Policy.  We decline to consider this issue.

Great West raised the issue before the district court for the first time in its motion for reconsideration.  The district court denied Great West's motion for reconsideration and declined to review Great West's argument because it failed to present this argument in its original briefing on the motion for summary judgment.  The district court reaffirmed in its Findings of Facts and Conclusions of Law that Great West failed to make this argument in the principal summary judgment briefing and Great West had not shown good cause for this failure.  The losing party may not use a motion for reconsideration as an improper vehicle to assert new legal arguments.  Matosantos Com. Corp. v. Applebee's Intern., Inc., 245 F.3d 1203, 1209 n.2 (10th Cir. 2001) (citing Havoco of Am., Ltd, v. Sumitomo Corp. of Am., 971 F.2d 1332, 1336–37 (7th Cir. 1992); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991)).  Great West has also waived this issue on appeal because it failed to argue plain error and failed to argue the district court erred in denying its motion to reconsider.  See United States v. Leffler, 942 F.3d 1192, 1196 (10th Cir. 2019) (holding that an issue is waived when appellant fails to preserve the issue and fails to argue plain-error on appeal); United States v. Pickel, 863 F.3d 1240, 1259 (10th Cir. 2017) (citing Silverton Snowmobile Club v. U.S. Forest Serv., 433 F.3d 772, 783 (10th Cir. 2006)) (holding that the issue was waived when appellant failed to raise an issue in the opening brief).  We will not address an issue that Great West

19

waived. See Steele v. Young, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993) (citing

Farmers Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989)).

## II.

Finally, Great West argues that the district court awarded a grossly excessive

amount of attorney fees. We review the district court's legal conclusions about

attorney fees de novo and the reasonableness and amount awarded for abuse of

discretion. See N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank, 222 F.3d

800, 817 (10th Cir. 2000) (quoting Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758,

765 (10th Cir. 1997)). The district court awarded MVT $1,055,905.87 in attorney

fees as entitled under the Texas Civil Practice and Remedies Code § 38.002 and

Texas Insurance Code Chapter 542.[8] The district court used the lodestar method to

calculate the attorney fees. Lodestar calculations, when supported by sufficient

evidence, create a presumption of reasonable and necessary attorney fees. Rohrmoos

Venture v. UTSW DVA Healthcare, LLP, 578 S.W.3d 469, 496 (Tex. 2019). Great

West does not argue the district court erred in its method or reasoning in calculating

the attorney fees. Instead, Great West contends that the attorney fees are

unreasonable because the district court erred in awarding (1) the $250,000 self-

insured retention under the C&F Policy; (2) the $250,000 MVT contributed to the

Parada litigation; and (3) the $41,476.84 attorney fees to Steve Blanco. But we

---

[8] Great West argued that Chapter 542 was inapplicable to the attorney fees in this instant case. For reasons we have discussed, Great West waived this argument, and we decline to address it.

concluded the district court did not err in awarding these damages, so the error Great West alleges does not support a reduction of the attorney fee award.  Great West provides no other reasoning, so it has not overcome the presumption that the fee award is reasonable.  The district court did not abuse its discretion, so we affirm the district court's award of attorney fees.

AFFIRMED.